**BUSHNELL CORPORATION, Plaintiff,**

v.

**ITT CORPORATION, Defendant.**

No. 96–2511–JWL.

United States District Court,
D. Kansas.

July 18, 1997.

---

Donald L. Kahl, Heather E. Pollock, Susan L. Gates, Hall, Estill, Hardwick, Gable, Golden & Nelson, Tulsa, OK, John J. Miller, Overland Park, KS, for plaintiff.

William R. Sampson, Bill J. Hays, Shook, Hardy & Bacon, L.L.P., Overland Park, KS, for defendant.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

In this action, plaintiff has asserted numerous causes of action against defendant, including antitrust, defamation, and tortious interference claims. Those three specific claims are the subject of defendant's present motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) (Doc. 57). For the reasons set forth below, the court grants the motion with respect to plaintiff's antitrust and tortious interference with contract claims, and defendant is hereby awarded judgment on those counts. The court denies the motion with respect to plaintiff's claims for defamation and tortious interference with prospective business relations, provided that plaintiff files a timely amendment of its complaint to cure pleading deficiencies in accordance with this opinion.

### I. Procedural Considerations and Summary of Opinion

In considering a motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c), the court generally applies the same standards that govern motions to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6). *Mock v. T.G. & Y. Stores Co.,* 971 F.2d 522, 528–29 (10th Cir.1992). Dismissal of a cause of action for failure to state a claim is appropriate only where it appears beyond a doubt that the plaintiff can prove no set of facts in support of the theory of recovery that would entitle it to relief, *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Fuller v. Norton,* 86 F.3d 1016, 1020 (10th Cir.1996), or where an issue of law is dispositive. *Neitzke v. Williams,* 490 U.S. 319, 326, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989). The pleadings are liberally construed, and all reasonable inferences are viewed in favor of the plaintiff. Fed.R.Civ.P. 8(a); *Fuller,* 86 F.3d at 1020. All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true. *Jojola v. Chavez,* 55 F.3d 488, 494 n. 8 (10th Cir.1995) (citing *Swanson v. Bixler,* 750 F.2d 810, 813 (10th Cir.1984)). The issue in resolving a motion such as this is not whether the plaintiff will ultimately prevail, but whether it is entitled to offer evidence to support the claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

■ In its brief in opposition to the motion, plaintiff attacks the method by which defendant has challenged the sufficiency of plaintiff's claims. In particular, plaintiff notes that defendant has already answered and denied the allegations. Rule 12 clearly permits defendant to challenge plaintiff's claims in this fashion, however. *See* Fed. R.Civ.P. 12(c) ("After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."), 12(h)(2) ("A defense of failure to state a claim upon which relief can be granted ... may be made in any pleading permitted or ordered under Rule 7(a), or by

motion for judgment on the pleadings, or at the trial on the merits."); *see also* 2 James W. Moore, *Federal Practice* § 12.38 (3d ed.1997); 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1367 (2d ed.1990). Moreover, defendant's motion complies with the deadline in the court's scheduling order for motions to dismiss for failure to state a claim.

Nonetheless, the court cannot completely ignore plaintiff's procedural concerns. Defendant argues in its brief that it should prevail on the claims at issue because plaintiff permitted the scheduling order's deadline for amendments to the complaint to pass without acting, "[d]espite ITT's repeated warnings that [plaintiff's] claims were ripe for dismissal." Thus, defendant would have the court enter judgment against plaintiff for even the most technical pleading deficiencies.

 The court will not so readily accede to defendant's "all-or-nothing" approach. In particular, the court believes that it should treat purely procedural failings differently from the failure to state a claim for substantive reasons. Such a distinction is warranted by different purposes served by motions under rule 12(c) and those under rule 12(b)(6), as explained by the commentators Wright and Miller:

> The motion for judgment on the pleadings under Rule 12(c) has its historical roots in common law practice, which permitted either party, at any point in the proceeding, to demur to his opponent's pleading and secure a dismissal or final judgment on the basis of the pleadings. The common law demurrer could be used to search the record and raise procedural defects, or it could be employed to resolve the substantive merits of the controversy as disclosed on the face of the pleadings. In contrast, the Rule 12(c) judgment on the pleadings procedure primarily is addressed to the latter function of disposing of cases on the basis of the underlying substantive merits of the claims and defenses as revealed in the formal pleadings and what is subject to judicial notice.
>
> A Rule 12(c) motion is designed to provide a means of disposing of cases when the material facts are not in dispute and a judgment on the merits can be achieved by focusing on the content of the pleadings and any facts of which the court will take judicial notice. The motion for a judgment on the pleadings only has utility when all material allegations of fact are admitted in the pleadings and only questions of law remain.

5A Wright & Miller, *supra*, § 1367, at 509–10 (footnotes omitted).

Rule 12(c) should be read in conjunction with several other federal rules authorizing pretrial motions, especially the various Rule 12(b) motions to dismiss.... Collectively these procedures provide an arsenal of weapons for challenging the sufficiency of an opponent's pleading and the viability of the underlying claim or defense. Although under modern practice these various techniques have to some extent become interchangeable, distinctions still remain as to their respective scope and effect. The question of which device should be employed in a particular context usually will be answered on the basis of the challenge, the identity of the party interposing it, and the nature of the alleged defect.

In the first instance, Rule 12(c) should be contrasted with the motion available under Rule 12(b). A motion to dismiss for any of the reasons enumerated in Rule 12(b) may be made as soon as plaintiff has filed his complaint. In proceeding under Rule 12(c), however, the pleadings must be closed before a party can move for judgment on the pleadings. There are other points of departure. With the exception of certain applications of the Rule 12(b)(6) motion, a Rule 12(b) motion to dismiss is directed solely towards procedural defects or the statement of plaintiff's claim for relief and does not seek to determine the substantive merits of the controversy. The granting of a Rule 12(b) motion merely means that plaintiff has failed to satisfy one of the procedural prerequisites for asserting his claim for relief. A motion for judgment on the pleadings, however, theoretically is directed towards a determination of the substantive merits of the controversy; thus, courts are unwilling to grant a judgment under Rule 12(c) unless it is clear that the merits of the controver-

sy can be fairly and fully decided in this summary manner.

5A Wright & Miller, *supra*, § 1369, at 532–33 (footnotes omitted).

■ Accordingly, in ruling on defendant's motion, the court will consider whether, with respect to a particular cause of action, plaintiff fails to state a claim for substantive reasons or because of what Wright and Miller would term procedural defects in the pleading. The court stresses that defendant properly brought its motion under rule 12(c) in either case. The distinction, however, affects the court's disposition of the claims at issue here because plaintiff, in its brief in opposition to the motion, has requested leave to amend its complaint in the event that it has failed to state a claim properly.

Where the challenge to a claim is substantive, the motion more comports with the usual purpose of a motion under rule 12(c), and judgment in favor of defendant is appropriate if the challenge is successful. In that case, plaintiff loses not for failure to plead certain facts, but because the facts that have been alleged, accepted as true for purposes of the motion, nonetheless do not give rise to liability under a recognized cause of action.

If, on the other hand, plaintiff does not state a claim with respect to certain allegations because the procedural pleading requirements of Fed.R.Civ.P. 8(a) have not been met, judgment for defendant is not necessarily the proper result here. Rather, the court concludes in its discretion that plaintiff should be permitted to cure the procedural deficiencies by filing an amended complaint.

■ Fed.R.Civ.P. 15(a) provides that, if the pleadings are closed, a plaintiff may amend its complaint only upon leave of court or consent of the other party, although such leave "shall be freely given when justice so requires." Granting leave to amend is a matter for the district court's discretion. *Triplett v. LeFlore County, Okla.*, 712 F.2d 444, 446 (10th Cir.1983). "In dismissing a complaint for failure to state a claim, the court should grant leave to amend freely 'if it appears at all possible that the plaintiff can correct the defect.'" *Id.* (quoting 3 James W. Moore, *Federal Practice* ¶ 15.10 (1983)). "'The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.'" *Id.* (quoting *Conley*, 355 U.S. at 48, 78 S.Ct. at 103).

Thus, where defendant argues that plaintiff has not pled a claim with sufficient particularity, the motion is more in the nature of a rule 12(b)(6) motion. If the court agrees that plaintiff's pleading is deficient, it will allow plaintiff to amend, as it routinely would in addressing motions filed before the close of the pleadings. In *Gallardo v. Board of County Comm'rs*, 857 F.Supp. 783 (D.Kan. 1994), the court disposed of a rule 12(c) motion in this fashion:

> As stated above, the court decides a Rule 12(c) motion employing the same standards that govern Rule 12(b)(6) motions. On 12(b)(6) motions, courts typically allow a plaintiff leave to amend his complaint in order to cure the defective pleading. On 12(c) motions, courts may grant leave to amend and may dismiss causes of action rather than grant judgment.

*Id.* at 787 (citations omitted). The court believes a similar result is warranted here.

Defendant notes the scheduling order deadline and contends that plaintiff had ample opportunity to amend its complaint. Plaintiff must adhere to a certain pleading standard, however, in order that defendant may be able to defend the action. In this case, defendant could have clarified any confusion with respect to claims by filing an earlier motion under rule 12(b)(6), by filing a motion for more definite statement under Fed.R.Civ.P. 12(e), or by the simple use of interrogatories. In light of that fact, as well as defendant's apparently intentional delay in filing its motion until the expiration of the amendment period as set forth in the scheduling order, the court does not believe that defendant will suffer undue prejudice from the additional delay caused by the court's granting leave to amend.

After considering defendant's motion, the court concludes that plaintiff's antitrust claims are ripe for judgment based on their substance. The court concludes as a matter

of law that, even if plaintiff's allegations are accepted as true, defendant's conduct is not anti-competitive and does not give rise to antitrust injury. Amendment of those claims will not be permitted—plaintiff's failure to state a claim with respect to these elements does not result from any procedural deficiency that may be corrected by additional pleading. Plaintiff has identified the conduct by defendant to which it objects, but that conduct does not give rise to antitrust liability as a matter of law, and judgment on the pleadings is therefore appropriate. Defendant's motion is granted with respect to those claims.

Judgment is also granted in favor of defendant on any claim by plaintiff for tortious interference with contract. Plaintiff has not identified any third-party contract that was breached as a result of improper interference by defendant, and plaintiff has abandoned any such claim by its failure to address that cause of action in its brief in opposition. Therefore, defendant's motion is also granted with respect to that claim.

The court agrees with defendant that plaintiff has not pled sufficient facts to state a claim for defamation. Such deficiency is procedural, however, and plaintiff may cure the defect by amended complaint. Plaintiff's claim for tortious interference with prospective business relations is also procedurally deficient to the extent that it relies on the tort of defamation to provide the "wrongful means" necessary to defeat defendant's competitor's privilege; plaintiff may amend to cure that defect as well. Defendant's motion is denied with respect to those claims, provided that plaintiff files a timely amended complaint curing the pleading defects, as more fully set forth herein. This denial of defendant's motion is without prejudice, however; defendant may attack the amended complaint by motion to dismiss for failure to state a claim after its filing. Because plaintiff will have already been given the opportunity to amend, plaintiff's claims would at that time be subject to dismissal if the procedural defects discussed herein have not been cured.

Finally, plaintiff's tortious interference with prospective business relations is not deficient to the extent that it relies on other causes of action remaining in the case for the "wrongful means". Defendant's motion is denied in that respect.

The court emphasizes that plaintiff, in amending its complaint, is not permitted to add claims or otherwise go beyond the additional pleading necessary to cure the defects, in accordance with the remainder of this opinion. Plaintiff's amended complaint must be filed with the court on or before August 1, 1997.

## II. Antitrust

Defendant argues that plaintiff's complaint does not state a claim for violation of antitrust law. According to the complaint, plaintiff succeeded as a party to an agreement with defendant that gave plaintiff the exclusive right to market and distribute certain night vision products manufactured by defendant. In its general fact section, the complaint alleges that defendant used plaintiff's trade secrets and proprietary information to develop and market night vision products in competition with plaintiff; contacted customers of plaintiff to convince them to purchase night vision products from defendant instead of from plaintiff; promoted its products at prices barely above plaintiff's standard costs for the product purchased by plaintiff from defendant under the agreement; solicited vendors of plaintiff using confidential information; and published defamatory statements about plaintiff to plaintiff's customers and the industry in general. Plaintiff also alleges in the complaint's fact section that defendant undertook such acts in furtherance of a conspiracy to restrain trade and as part of a conspiracy and attempt to monopolize the relevant market.

The complaint contains nine counts—antitrust violations, breach of contract, declaratory judgment for continued enforcement of the agreement, breach of implied covenant of good faith, misappropriation of trade secrets, unfair competition, defamation, tortious interference, and breach of fiduciary duty. Plaintiff's first count, labeled "Sherman Act §§ 1, 2", incorporates the complaint's factual allegations and contains the following additional allegations:

24. The acts complained of by Bushnell have been undertaken by ITT in further-

ance of a conspiracy or combination with others in restraint of trade in the relevant market. Further the complained of acts affect interstate commerce and trade.

25. The acts complained of by Bushnell have been undertake [sic] by ITT in furtherance of a conspiracy and attempt to monopolize the relevant market. In taking these actions ITT intended to drive its competition in the night vision market out of business.

26. As a direct result of the intentional actions of ITT, both competition and Bushnell have been injured in an amount to be determined at trial and will request attorneys' fees as provided by law.

### A. Antitrust Injury

 In count I, plaintiff seeks damages for violations of sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2. Damages for antitrust violations are recoverable by private parties under section 4 of the Clayton Act, 15 U.S.C. § 15. To recover such damages, however, a private plaintiff must establish the existence of "antitrust injury". *Atlantic Richfield Co. v. USA Petroleum Co.,* 495 U.S. 328, 334, 110 S.Ct. 1884, 1889, 109 L.Ed.2d 333 (1990); *Sharp v. United Airlines, Inc.,* 967 F.2d 404, 406–07 (10th Cir. 1992). The Supreme Court has defined antitrust injury as "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977). The court concludes that, under the facts alleged by plaintiff, taken as true, plaintiff did not suffer antitrust injury in this case as a matter of law.

In *Brunswick,* the defendant, a national bowling center chain, took over several bowling centers that would otherwise have gone out of business; plaintiff, who owned other bowling centers, sought damages to recover income that it would have received had the acquired centers gone bankrupt. *Id.* at 488, 97 S.Ct. at 697. The Supreme Court held that such injury did not constitute antitrust injury because "it is inimical to the antitrust laws to award damages for losses stemming from continued competition." *Cargill, Inc. v. Monfort of Colo., Inc.,* 479 U.S. 104, 109–10,

107 S.Ct. 484, 489, 93 L.Ed.2d 427 (1986) (quoting *Brunswick,* 429 U.S. at 488, 97 S.Ct. at 697). In reaching that conclusion, the court noted that the antitrust laws "were enacted for 'the protection of *competition,* not *competitors.'* " *Brunswick,* 429 U.S. at 488, 97 S.Ct. at 697 (quoting *Brown Shoe Co. v. United States,* 370 U.S. 294, 320, 82 S.Ct. 1502, 1521, 8 L.Ed.2d 510 (1962)).

In *Cargill,* the Supreme Court again held that the plaintiff had not established antitrust injury. There, the plaintiff sought to recover for profits lost by the defendant's lowering prices to a level at or slightly above its costs. *Cargill,* 479 U.S. at 114–15, 107 S.Ct. at 491–92. The Court held that the plaintiff could not recover for such injury because, as in *Brunswick,* the loss resulted from competition. *Id.* at 115–16, 107 S.Ct. at 491–93.

In *Atlantic Richfield,* the Supreme Court reaffirmed that "[a]ntitrust injury does not arise for purposes of § 4 of the Clayton Act . . . until a private party is adversely affected by an *anticompetitive* aspect of the defendant's conduct." 495 U.S. at 339, 110 S.Ct. at 1892. In that case, the Court held that, unless the prices are predatory, losses from a pricing practice do not stem from anticompetitive conduct. *Id.* at 337–41, 110 S.Ct. at 1890–93. The Court again emphasized that the antitrust laws were enacted to protect competition, not competitors. *Id.* at 338, 110 S.Ct. at 1891; *see also Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.,* 509 U.S. 209, 222, 113 S.Ct. 2578, 2587, 125 L.Ed.2d 168 (1993) ("[A] plaintiff seeking to establish competitive injury resulting from a rival's low prices must prove that the prices complained of are below an appropriate measure of its rival's costs.").

 These Supreme Court cases mandate this court's conclusion that the injury plaintiff complains of does not constitute antitrust injury as a matter of law. The allegations in plaintiff's complaint, taken as true, establish that defendant contacted plaintiff's customers and vendors, defamed plaintiff, used plaintiff's trade secrets and proprietary information, marketed products in competition with plaintiff, and set prices barely above plaintiff's costs for the products. The

logical and stated result of such conduct is plaintiff's inability to compete further in the market. Such injury is not an antitrust injury, however, because it does not affect competition in the market generally. In fact, plaintiff essentially complains about *increased* competition in the market. Plaintiff is not saved by its conclusory allegation that defendant's conduct injured competition or by its argument that the removal of one competitor from the market injures competition generally. It is clear from the Supreme Court precedent that making life difficult for one particular competitor in the absence of conduct that otherwise affects the entire market does not give rise to antitrust injury. Specifically, under *Atlantic Richfield,* losses from a competitor's setting prices barely above plaintiff's own costs does not constitute the requisite injury. Because plaintiff can establish only injury to a competitor but not to competition, plaintiff has not established antitrust injury, and defendant is therefore entitled to judgment on plaintiff's antitrust claims.

### B. Section 1 of Sherman Act

▮ Defendant is also entitled to judgment on its claim under section 1 of the Sherman Act based on plaintiff's failure as a matter of law to establish the required elements for a violation of that section. Section 1 prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce." 15 U.S.C. § 1. "A plaintiff who alleges a violation of section 1 must establish: (1) concerted action in the form of a contract, combination, or conspiracy, and (2) an unreasonable restraint of trade." *Systemcare, Inc. v. Wang Labs. Corp.,* 117 F.3d 1137, 1139 (10th Cir.1997). Plaintiff fails on the second element.

▮ To establish a violation of section 1, plaintiff must prove either an unreasonable restraint under the "rule of reason" or a per se violation of the section. *Coffey v. Healthtrust, Inc.,* 955 F.2d 1388, 1392 (10th Cir. 1992). As noted above, plaintiff basically alleges that defendant attempted to drive it out of business. A conspiracy to eliminate a competitor by unfair means is not a per se violation. *Midwest Underground Storage, Inc. v. Porter,* 717 F.2d 493, 496 (10th Cir.

1983). Nor has plaintiff identified any other possible per se violation. Therefore, defendant's conduct must be judged under the rule of reason.

▮ To satisfy the rule of reason, plaintiff must show an adverse affect on competition. *Coffey,* 955 F.2d at 1392; *Midwest Underground Storage,* 717 F.2d at 498. "[T]he adverse affect must be on *competition,* not on any individual competitor or on plaintiff's business." *Reazin v. Blue Cross & Blue Shield of Kan., Inc.,* 899 F.2d 951, 960 (10th Cir.1990). Under the rule of reason, "the court examines whether the challenged agreement is one that promotes competition or one that suppresses competition." *City of Chanute, Kan. v. Williams Natural Gas Co.,* 955 F.2d 641, 652 (10th Cir.1992).

▮ The court concludes that, even if plaintiff's allegations are accepted as true, defendant's conduct does not unreasonably restrain trade under section 1 as a matter of law because the conduct does not have an adverse affect on competition. As noted above in the discussion of antitrust injury, defendant's conduct may affect plaintiff's business adversely, but it does not implicate competition in the market generally. Therefore, plaintiff's section 1 claim cannot stand.

Plaintiff relies on *Perryton Wholesale, Inc. v. Pioneer Distributing Co. of Kansas,* 353 F.2d 618 (10th Cir.1965). In *Perryton,* the court stated that a violation of section 1 may be found "when a conspiracy exists to suppress competition in interstate trade through the elimination of a competitor by unfair means." *Id.* at 621. In *Midwest Underground Storage,* however, the court made it clear that such elimination is not a per se violation and must therefore be judged on a case-by-case basis. 717 F.2d at 496. Moreover, the *Perryton* court specifically distinguished cases, like the present case, involving a conspiracy to terminate a distributorship, which does not injure competition generally. 353 F.2d at 622. In the present case, section 1 is not violated because competition is not suppressed.

### C. Section 2 of Sherman Act

 Finally, the lack of anti-competitive conduct by defendant also entitles it to judgment on the merits of section 2. Section 2 of the Sherman Act prohibits monopolies in interstate trade or commerce, as well as attempts or conspiracies to monopolize. 15 U.S.C. § 2. Plaintiff has alleged both an attempt and a conspiracy to monopolize. These causes of action require proof of conduct in furtherance of the attempt or conspiracy, which conduct must be anti-competitive. *See TV Communications Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1025–26 (10th Cir.1992) (listing elements of causes of action); *Multistate Legal Studies, Inc. v. Harcourt Brace Jovanovich Legal & Professional Publications, Inc.*, 63 F.3d 1540, 1550 (10th Cir.1995) (conduct in furtherance element requires showing of anti-competitive conduct), *cert. denied,* ── U.S. ──, 116 S.Ct. 702, 133 L.Ed.2d 659 (1996). Again, for the reasons stated above, the court concludes that defendant's conduct was not anti-competitive as a matter of law.[1]

### III. Defamation

Defendant next asserts that plaintiff has not properly stated a claim for defamation. In its seventh count, the complaint states:

> 51. ITT and its agents have intentionally published false and defamatory statements regarding Bushnell to third parties for the express purpose of injuring Bushnell's reputation and goodwill in the marketplace.

The complaint contains one other allegation touching on this claim:

> 16. ITT, its distributors and employees have published various false and defamatory statements regarding Bushnell to Bushnell's customers and the industry in general for the purpose of injuring Bushnell in its business. These false and defamatory statements have included statements that Bushnell used rejected components in its night vision products, that Bushnell was not able to provide current-technology night vision products, and that Bushnell had no continuing rights under the Agreement.

 Defendant argues that these allegations are not sufficient to state a claim for defamation because Kansas law[2] requires that a defamation complaint "set forth the alleged defamatory words spoken or published, the names of those persons to whom they were spoken or published and the time and place of their publication." *Schulze v. Coykendall,* 218 Kan. 653, 657, 545 P.2d 392 (1976); *see Classic Communications, Inc. v. Rural Tele. Serv. Co.,* 956 F.Supp. 910, 920 (D.Kan.1997) (applying *Schulze* pleading standard); *Gentry v. Hopkins,* 1989 WL 161439, at *3 (D.Kan. Dec.19, 1989) (same).

---

1. The court does not agree with defendant's contention that plaintiff's attempted monopolization claim is insufficient for failure to allege a relevant market. *See TV Communications,* 964 F.2d at 1025–26. The complaint adequately names the night vision product market. The court does agree that plaintiff's complaint does not sufficiently allege the existence of a conspiracy (conspiracy in restraint of trade and conspiracy to monopolize claims) or defendant's market power (attempt to monopolize claim). Although such failures are fatal to antitrust pleading, *see id.,* they are more procedural than substantive in nature, and the court would ordinarily permit amendment to cure the deficiencies. The absence of antitrust injury or anti-competitive conduct, however, dooms plaintiff's antitrust claims on substantive grounds, thereby requiring judgment for defendant on the pleadings under rule 12(c).

2. The court concludes that Kansas substantive law controls plaintiff's defamation and tortious interference claims. When exercising diversity jurisdiction, the court must apply the forum state's choice of law rules to determine which state's substantive law applies. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). In Kansas, tort actions are governed by the law of the state where the tort occurred, that is, the state where the wrong was felt. *Ling v. Jan's Liquors,* 237 Kan. 629, 634–35, 703 P.2d 731 (1985). Because the alleged wrong to plaintiff involved financial harm, the court would look to the state in which plaintiff felt that financial injury. *See Lawrence–Leiter & Co. v. Paulson,* 963 F.Supp. 1061, 1065 (D.Kan.1997) (in defamation action, concluding that Kansas courts would apply law of state of plaintiff's domicile, where plaintiff felt injury from alleged tort); *St. Paul Furniture Mfg. Co. v. Bergman,* 935 F.Supp. 1180, 1187 (D.Kan.1996) (same conclusion in case involving tortious interference claim). Thus, because plaintiff's principal place of business is in Kansas, Kansas law applies to both the defamation and tortious interference claims.

As the court has ruled on a prior occasion, however, the sufficiency of a complaint alleging defamation under Kansas law is judged under rule 8(a) instead of under Kansas pleading standards:

> The question of whether a state law defamation claim has been sufficiently pled in a federal diversity case is a procedural one governed by Fed.R.Civ.P. 8. *Kelly v. Schmidberger*, 806 F.2d 44, 46 (2d Cir. 1986). Instead of enforcing the state's technical pleading requirements, the federal court determines whether a short and plain statement of the claim showing entitlement to relief has been pled. Fed. R.Civ.P. 8(a)(2); *Caster v. Hennessey*, 781 F.2d 1569, 1570 (11th Cir.1986).

*Nelson v. Allstate Ins. Co.*, 1993 WL 105120, at *5 (D.Kan. Mar.8, 1993) (Lungstrum, J.); *accord Etzel v. Musicland Group, Inc.*, 1993 WL 23741, at *10 (D.Kan. Jan.8, 1993); *see also* 5 Wright & Miller, *supra*, § 1245 (sufficiency of defamation pleading should be judged under rule 8(a), not under a state's pleading requirements); *McGeorge v. Continental Airlines, Inc.*, 871 F.2d 952, 955 (10th Cir.1989) (judging sufficiency of defamation complaint under rule 8(a)).

Nonetheless, the court concludes that plaintiff's allegations are insufficient under rule 8(a) to state a claim for defamation. "[I]n the context of a defamation claim, Fed. R.Civ.P. 8(a) requires that the complaint provide sufficient notice of the communications complained of to allow [the defendant] to defend itself." *McGeorge*, 871 F.2d at 955. There is a significant exception to the general rule of liberally construing a complaint in applying rule 12(b)(6): when the complaint attempts to state a "traditionally disfavored" cause of action, such as defamation, courts have construed the complaint by a stricter standard. 5A Wright & Miller, *supra*, § 1357.

Paragraph 16 of plaintiff's complaint is not sufficient. Although three allegedly defamatory statements are listed, the allegation does not identify with necessary specificity who made the statements and to whom the statements were made. The allegation states that "ITT, its distributors and employees" made the statements to "Bushnell's customers and the industry in general," but such a generic statement does not provide adequate details about the alleged defamation to enable defendant to defend the allegation. Nor does the complaint give any time frame for the alleged statements, a fact of particular importance to a defendant in considering the application of the statute of limitations. *See id.* The court concludes that plaintiff's allegations of defamation did not give defendant "sufficient notice of the communications complained of" to allow defendant to answer and defend this claim. *Cf. Nelson*, 1993 WL 105120, at *5 (amended complaint gave sufficient notice of defamation claim where it set forth the alleged defamatory words spoken and the time period in which they were allegedly spoken).

This deficiency, however, is procedural, not substantive. Therefore, plaintiff is permitted to amend its complaint to allege additional, clarifying facts with respect to its defamation allegation. Defendant's motion is denied as it relates to this claim, provided such an amendment is effected.

## IV. Tortious Interference

### A. Interference with Contract

In its tortious interference count, labeled "Tortious Interference With Business and Contractual Relations," plaintiff's complaint incorporates its prior allegations and thereafter alleges as follows:

> 54. Bushnell has established business and contractual relations with its customers and its vendors. ITT was fully aware of these relationships.

> 55. ITT has, and will continue to: (1) wrongfully solicit the customers of Bushnell to do business with ITT and to cease doing business with Bushnell, and (2) wrongfully solicit Bushnell's vendors, all using Bushnell's trade secrets and confidential and proprietary information misappropriated from Bushnell.

> 56. ITT, as evidenced by its actions, acted wilfully and fraudulently in soliciting Bushnell's customers and vendors while representing different facts and pricing information to Bushnell so that they were unaware of ITT's actions. ITT took these actions with an intent to injure Bushnell's

business and reputation so as to increase ITT's status and position in the market.

■ "Kansas has long recognized that a party who, without justification, induces or causes a breach of contract will be answerable for damages caused thereby." *Dickens v. Snodgrass, Dunlap & Co.*, 255 Kan. 164, 168, 872 P.2d 252 (1994) (citing *Turner v. Halliburton Co.*, 240 Kan. 1, syl. ¶ 7, 722 P.2d 1106 (1986)). Under Kansas law, the elements essential to recovery for tortious interference with contract are as follows:

> (1) the contract; (2) the wrongdoer's knowledge thereof; (3) his intentional procurement of its breach; (4) the absence of justification; and (5) damages resulting therefrom.

*Id.* at 168–69, 872 P.2d 252.

■ Here, plaintiff has alleged that it had "contractual relations" with its customers and vendors. It has not, however, alleged that any particular contract was breached as a result of conduct by defendant. The court concludes that this most basic element of breach must be alleged to state a claim for tortious interference with contract. *See Reazin v. Blue Cross & Blue Shield of Kan.*, 663 F.Supp. 1360, 1491 (D.Kan.1987) (it is fundamental that the tort of interference with contract requires proof of breach), *aff'd,* 899 F.2d 951 (10th Cir.1990).

Plaintiff has not addressed this particular tort in opposing defendant's motion for judgment on the pleadings. Accordingly, the court deems abandoned any claim by plaintiff for tortious interference with contract. Defendant's motion is granted with respect to this claim, and judgment thereon is awarded in favor of defendant. Plaintiff will not be permitted to amend its complaint to allege properly a claim of tortious interference with contract because plaintiff, by its silence, has not indicated that it could correct the defect here.

### B. Interference with Prospective Business Relations

■ Kansas also recognizes the tort of tortious interference with prospective business relations, which requires proof of the following elements:

> (1) the existence of a business relationship or expectancy; (2) knowledge of the rela-

tionship or expectancy by the defendant; (3) that, except for the conduct of the defendant, plaintiff was reasonably certain to have continued the relationship or realized the expectancy; (4) intentional misconduct by the defendant; and (5) damages suffered by plaintiff as a direct or proximate cause of defendant's misconduct.

*DP–Tek, Inc. v. AT&T Global Info. Solutions Co.*, 100 F.3d 828, 831–32 (10th Cir.1996) (quoting *Turner,* 240 Kan. at 12, 722 P.2d 1106). The Kansas Supreme Court has stated, however:

> It is recognized that not all interference in present or future contractual relations is tortious. A person may be privileged or justified to interfere with contractual relations in certain situations.

*Turner,* 240 Kan. at 12, 722 P.2d 1106.

■ In *DP–Tek,* the Tenth Circuit held that the Kansas Supreme Court would adopt Restatement section 768, which sets out a privilege for competitors. *DP–Tek,* 100 F.3d at 833. Section 768 provides:

> One who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor or not to continue an existing contract terminable at will does not interfere improperly with the other's relation if
>
> (a) the relation concerns a matter involved in the competition between the actor and the other and
>
> (b) the actor does not employ wrongful means and
>
> (c) his action does not create or continue an unlawful restraint of trade and
>
> (d) his purpose is at least in part to advance his interest in competing with the other.

Restatement (Second) of Torts § 768(1) (1979).

Plaintiff acknowledges in its complaint that defendant is its competitor. Therefore, the privilege set out in section 768 is implicated by plaintiff's assertion of its claim for tortious interference with prospective business relations. Moreover, there is no dispute about the applicability of the first and fourth elements of the competitor's privilege, and

the court's ruling on plaintiff's antitrust claim makes the third element applicable as well.

With respect to the second element, the Tenth Circuit has held that the Kansas Supreme Court would interpret "wrongful means" to require independently actionable conduct. *DP–Tek*, 100 F.3d at 835. Defendant argues that, given the obvious implication of section 768, plaintiff's claim is deficient because it does not properly allege the independently actionable conduct by defendant in its interference with plaintiff's business relations. In arguing this point, defendant notes that plaintiff has not properly stated a claim for violation of the antitrust laws or for defamation.

 . The court disagrees that plaintiff's complaint is deficient in this regard. In its tortious interference count, plaintiff alleges that defendant interfered by using misappropriated trade secrets and proprietary information. The count also incorporates the complaint's other allegations, which include a claim for misappropriation of trade secrets. Therefore, plaintiff has alleged independently actionable conduct by defendant as the wrongful means by which it allegedly interfered. Moreover, liberally construed, the word "wrongfully" in paragraph 55 of plaintiff's claim refers to the other causes of action asserted in the complaint, such as breach of contract, unfair competition, and breach of fiduciary duty. Such causes of action may serve as the independently actionable conduct required under the privilege. *See DP–Tek, Inc. v. AT&T Global Info. Solutions Co.,* 891 F.Supp. 1510, 1522–23 (D.Kan.1995) (Lungstrum, J.) (breach of fiduciary duty and misappropriation of trade secrets may serve as the wrongful means to sustain a tortious interference claim), *aff'd,* 100 F.3d 828 (10th Cir.1996). Accordingly, defendant's motion is denied with respect to plaintiff's tortious interference with prospective business relations claim to the extent that it relies on such causes of action for the necessary wrongful means.

Because plaintiff's antitrust claims proved deficient, plaintiff has not properly pled a claim for tortious interference based on an antitrust violation as the predicate cause of action for the wrongful means requirement. Because that deficiency is substantive, plaintiff may not now amend its tortious interference claim to include such conduct as the wrongful means.

 Similarly, because plaintiff's defamation claim was not properly pled, its pleading of the tortious interference claim is also deficient, to the extent that defamation would provide the wrongful means under Restatement section 768. *See Classic Communications,* 956 F.Supp. at 922. Because the failure to plead defamation properly was procedural, however, plaintiff may amend its complaint to allege properly a claim of tortious interference with prospective business relations based also on defamation as the wrongful means. Defendant's motion, as it relates to this issue, is denied, contingent upon a proper amendment by plaintiff.

Plaintiff is instructed to amend its claim for tortious interference with prospective business relations as follows. In that count, plaintiff should list specifically its causes of action whose allegations it alleges provide the wrongful means by which defendant interfered. Except for defamation, those other causes of action have already been sufficiently pled, and their allegations may be incorporated in the tortious interference count by reference. Allegations of defamation may also be incorporated by reference as wrongful means as long as that cause of action has been properly pled in the amended complaint. Plaintiff is reminded that the scope of its amendment is very narrow and is limited to curing pleading defects in accordance with this opinion. Plaintiff may not add causes of action, either independently or as the predicate conduct for its tortious interference claim.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for judgment on the pleadings (Doc. 57) is granted with respect to plaintiff's antitrust and tortious interference with contract claims, and defendant is hereby awarded judgment on those claims.

**IT IS FURTHER ORDERED THAT** defendant's motion is denied with respect to plaintiff's claim for defamation and tortious interference with prospective business relations, provided that plaintiff cures those claims' procedural pleading deficiencies in accordance with this opinion by timely filing of

an amended complaint. Such amended complaint shall be filed with the court on or before August 1, 1997. In this event, defendant's motion is denied without prejudice; it may file a motion to dismiss for failure to state a claim after the filing of the amended complaint.

IT IS SO ORDERED.