**IT NETWORK, INC., a Delaware corporation, Plaintiff,**

v.

**Michael D. SHELL; Interactive Media Services, Inc., a Kansas corporation; and Interactive Information Services, L.L.C., Defendants.**

No. 98–1116–JTM.

United States District Court, D. Kansas.

Sept. 18, 1998.

David E. Bengtson, Marc P. Clements, Morrison & Hecker L.L.P., Wichita, KS, for Plaintiff.

Gary M. Austerman, Christopher A. McElgunn, Klenda, Mitchell, Austerman & Zuercher, L.L.C., Wichita, KS, for Defendants.

## MEMORANDUM ORDER

MARTEN, District Judge.

The present dispute arises from the provision not to compete which was contained in the employment of defendant Michael D. Shell with Brite Voice Systems. On November 1, 1997, Brite sold its electronic publishing business to IT Network, Inc. IT Network has brought the present action alleging that Shell's actions in forming Interactive Media Services, Inc. and Interactive Information Services, L.L.C. violates the noncompete clause in the Brite–Shell contract. It also contends Shell and the defendant corporations have tortiously interfered with its contracts with former IT Network employees who are now employees of the defendants, and that the defendants have tortiously interfered with contractual relationships and prospective advantage with its electronic publishing customers.

The defendants have moved to dismiss the breach of contract and customer relations interference portions of the complaint. The defendants have not sought to dismiss Count 3, which alleges tortious interference with the contracts between IT Network and its employees. Contemporaneous with their reply brief relating to the motion to dismiss, defendants have also now submitted a motion for summary judgment on Counts 1 and 2 of the complaint, the breach of contract claims.

The essential facts—as they relate to the motion to dismiss—are not the subject of real dispute. While the defendants' motion for summary judgment awaits final briefing, the court finds no substantial justification for withholding ruling on the earlier motion. For the reasons stated herein, the motion to dismiss will be granted.

The terms of the Brite–Shell employment agreement are straightforward. Paragraph 5 of the agreement provides:

> Employee covenants and agrees that during Employee's employment with Brite and for a period of one year following the date of termination of Employee's employment with Brite (the "Restricted Period"), Employee shall not in any manner compete with Brite or any successor to the business of Brite, as an owner, officer, director, employee, agent, consultant, lender or otherwise, with any person or entity engaged in a business involving a line of business conducted by Brite during the term of Employee's employment.

The agreement also contains an express provision governing "Binding Effect; Assignment." Paragraph 9 provides:

> The rights an [sic] obligations of this Agreement shall bind and inure to the benefit of any successor of Brite by reorganization, merger or consolidation or any assignee of all or substantially all of Brite's business and properties.

IT Network relies on the text of Paragraph 5 while ignoring the plain effect and language of Paragraph 9. That is, IT Network does not allege that it is the successor of Brite by reorganization, merger or consolidation. It does not allege that it is the assignee of all or substantially all of Brite's business or properties. Rather, IT Network simply purchased the segment of Brite's business involving electronic publishing.

IT Network contends it can enforce the Brite–Shell contract because it is a successor to the business of Brite and that it is engaged in a line of business conducted by Brite. That is, that it falls within the terms of Paragraph 5. The court must conclude that the two provisions of the contract deal with separate issues. Paragraph 5 provides the obligation not to compete; it determines whether a breach of the agreement has occurred. Paragraph 9 governs the separate issue of who has the right to enforce the agreement. And by its terms Paragraph 9 is much narrower in terms of who is given the right to enforce the contract. Even if Shell's competitive activities might otherwise constitute a breach, the contract does not give IT Network any right to compensation for the breach.

In its response opposing the motion to dismiss, IT Network offers several arguments against this interpretation. First, it contends such an interpretation "ignores the

clear purpose of the Covenant Not to Compete," and would have the result of "rendering the language of Section 5 meaningless." (Resp. at 11, 13). This is incorrect. Such an interpretation is merely to recognize that the parties to the Employment Agreement voluntarily and explicitly restricted who could enforce the agreement. The language in Paragraph 5 is not rendered meaningless. It still serves the standard for determining Shell's obligations, but the right to enforce the agreement is held by Brite; it does not grant any right of action to IT Network.

IT Network also stresses that, in litigation in state court between Brite and Shell, Shell has taken the alternative position from that asserted here—that Brite relinquished any right to enforce the covenant not to compete. Even assuming inconsistency on the part of Shell in the defense raised in the state action,[1] the fact remains that what governs here is the plain language of the Employment Agreement. That agreement, read as a whole and giving effect to all its parts, does not pass the sword of enforcement from Brite to IT Network. Rather, by containing an explicit "Binding Effect" provision which limits the right of enforcement to a narrow class, the agreement gives no authority to IT Network to enforce Paragraph 5.

■ Shell has also moved to dismiss Count 4 of the complaint, which alleges tortious interference with the relations between IT Network and its customers. Shell argues the claim is defective in raising claims for tortious interference with contractual relations, since it alleges only that some customers have "terminated" contracts without alleging breach of the contracts. Second, Shell argues that the complaint fails to allege the sort of improper action on the part of Shell necessary to support a claim for interference with prospective business relations.

IT Network argues that the tort of interference with contract does not require a

"breach" of the underlying contract, but may exist where the defendant caused a party to the contract not to perform or complete its duties under the contract. This position has been rejected in this district. In *Bushnell Corp. v. ITT Corp.*, 973 F.Supp. 1276, 1288 (D.Kan.1997), Judge Lungstrum concluded that the "most basic element of breach must be alleged to state a claim for tortious interference with contract."

It does not follow, however, that the plaintiff's claim should be dismissed. Although the complaint does not specifically allege any of IT Network's customers breached their contracts, the complaint nonetheless does place defendants on notice of the claim for tortious interference with contract.

Moreover, IT Network's response affirmatively states its intent to prove customers breached their contracts. (Resp. at 16). The case is thus markedly different from *Bushnell*, where the court held that a breach of the underlying contract was a necessary element of the tort. In that case the court refused to permit the plaintiff to amend the complaint to add an allegation of breach because the issue was deemed abandoned:

> Plaintiff has not addressed this particular tort in opposing defendant's motion for judgment on the pleadings. Accordingly, *the court deems abandoned any claim by plaintiff for tortious interference with contract.* Defendant's motion is granted with respect to this claim, and judgment thereon is awarded in favor of defendant. Plaintiff will not be permitted to amend its complaint to allege properly a claim of tortious interference with contract *because plaintiff, by its silence, has not indicated that it could correct the defect here.*

973 F.Supp. at 1288 (emphasis added).

Here, of course, IT Network has affirmatively asserted that it can correct the defect, and amendment would seem appropriate.

---

**1.** There would be no inconsistency in terms of the contract interpretation rendered by the state court. Judge Anderson ruled in the state action that ▪

> Section 9 of the Employment Agreement prohibits the Employment Agreement from being assigned to or inuring to the benefit of a successor or assign if the successor does not acquire all or substantially all of Brite's assets or

lines of business. IT Network, Inc. does not qualify as a successor or assign under Section 9 and the Court concludes that the Employment Agreement cannot be assigned to IT Network, Inc. or inure to its benefit.

*Shell v. Brite Voice Systems*, Slip op., at 8–9, Case No. 97–C–3696 (Sedgwick County Dist.Ct. June 15, 1998).

The court finds, however, that the motion to dismiss may be granted as to Count 4 to the extent that it asserts a claim for interference with prospective business relations. Shell argues that the complaint fails to allege any "wrongful action" by the defendants which would support such a claim. A competitor is permitted to intentionally interfere with prospective business relations, so long as he or she "does not employ wrongful means" in accomplishing the interference. *Restatement (Second) of Torts*, § 768(1)(b). The various wrongful acts—breach of the Brite–Shell Employment Agreement, wrongful use of trade secrets or interference with the employment contracts of former IT Network employees—asserted by plaintiff in the present action do not rise to this level.

The plaintiff correctly notes that there is some authority for the principle that a competitor's act in inducing an employee to violate the employee's contractual obligations may constitute "wrongful means" for purposes of establishing tort liability. *See Restatement* § 768 comment i. The Tenth Circuit, however, has rejected such an interpretation, favoring a narrow view of the term "wrongful means" which refers to conduct such as "physical violence, fraud, civil suits, and criminal prosecutions." *Occusafe, Inc. v. EG&G Rocky Flats, Inc.*, 54 F.3d 618, 623 (10th Cir. 1995) (internal quoted authority and citations omitted). In *Occusafe*, the court explicitly held that a competitor's act in allegedly hiring the plaintiff's employees in violation of covenants not to compete did not constitute illegal conduct, falling within the competitor's privilege. "As a result, defendant's conduct was not 'improper' for purposes of a claim for intentional interference in prospective economic advantage, and plaintiff's claim must fail." *Id.*

In *Occusafe*, the court was applying Colorado law. The court reached a similar conclusion applying Kansas law in *DP–Tek, Inc. v. AT&T Global Information Solutions*, Co., 100 F.3d 828 (10th Cir.1996). In that case the court concluded that the tort of interference with prospective economic relations requires proof of "independently actionable conduct" by the defendant. *Id.*, at 835. That is, the act of a competitor is not actionable unless it involved " ' "means which are

intrinsically wrongful—that is, conduct which is itself capable of forming the basis for liability of the actor." ' "*Id.*, at 834 (quoting *Amerinet, Inc. v. Xerox Corp.*, 972 F.2d 1483, 1507 (8th Cir.1992) (quoting *Conoco, Inc. v. Inman Oil*, 774 F.2d 895, 907 (8th Cir. 1985))). The *DP–Tek* court also rejected the appellant's argument that it had shown that independently actionable conduct existed in the alleged acts of the defendant in inducing a customer to breach the customer's confidentiality agreement by revealing confidential pricing information. "We agree," the court concluded, "with the district court that even if there was breach of the confidentiality agreement 'it was an agreement to which [the defendant] was not a party and which, of course it did not breach.' " *Id.*, at 835 (quoting *DP–Tek, Inc. v. AT&T Global Information Solutions*, Co., 891 F.Supp. 1510, 1524 (D.Kan.1995)).

In the present case, each of the allegedly wrongful acts asserted by IT Network to support its claim of tortious interference with prospective relations is grounded on acts which would not independently subject the defendants to liability to the plaintiff. As discussed earlier, Shell did not have any duty to IT Network to refrain from competition. Even assuming IT Network's former employees breached their employment agreements or divulged trade secrets, there is no allegation in the complaint of independently actionable conduct by Shell or the other defendants. IT Network has not advanced any independent claims against the defendants for unfair competition or misappropriation of trade secrets.

IT IS ACCORDINGLY ORDERED this 18th day of September, 1998, that the defendants' motion to dismiss is granted in its entirety as to Counts 1 and 2 of the complaint, and to Count 4 as it relates to interference with prospective business relations. Defendants' motion for partial summary judgment is denied as moot. The court will allow plaintiff 30 days to amend Count 4 to allege defendants induced plaintiff's customers to breach their contracts with plaintiff.