William I. KOCH, et al., Plaintiffs,

v.

KOCH INDUSTRIES, INC.,
et al., Defendants.

No. 85–1636–SAC.

United States District Court,
D. Kansas.

Jan. 14, 1998.

Clifford L. Malone, Adams, Jones, Robinson & Malone, Harry L. Najim, Najim Law Offices, Wichita, KS, John T. Hickey, Jr, Alex Dimitrief, Kirkland & Ellis, Chicago, IL, Joseph F. Ryan, Lyne, Woodworth & Evarts, Boston, MA, Fred H. Bartlit, Jr, Bartlit, Beck, Herman, Palenchar & Scott, Chicago, IL, Donald E. Scott, Bartlit, Beck, Herman, Palenchar & Scott, Denver, CO, Gregory S. C. Huffman, Thompson & Knight, Dallas, TX, Russell E. Brooks, Milbank, Tweed, Hadley & McCloy, New York, NY, Stephen M. Joseph, Redmond & Nazar, L.L.P., Wichita, KS, Michael Paul Kirschner, Lee & Kirschner, P.L.L.C., Oklahoma City, OK, for Plaintiffs.

James M. Armstrong, Robert L. Howard, Timothy B. Mustaine, Foulston & Siefkin L.L.P., Wichita, KS, Donald L. Cordes, Koch Industries, Inc., Wichita, KS, for Defendants.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

The case comes before the court on the defendant's brief as to questions of law for determination in advance of trial (Dk.645), the plaintiff's motion for leave to file surreply (Dk.652), the Simmons plaintiffs' motion for leave to file surreply (Dk.653), and the parties proposed pretrial order. The court recently asked the parties to brief certain outstanding issues of law raised in the parties' proposed pretrial order.[1] The court grants the plaintiffs' requests to file surreplies and further considers the defendants' objections and response to those surreplies.

## EXCLUSIVITY OF CONTRACTUAL WARRANTIES

The defendants argue that through admitted facts the plaintiffs have proclaimed their

---

1. During the conference call on August 25, 1997, the court specifically identified for briefing the defendants' issues of law one through three, thirteen, and fourteen. The defendants say that issues thirteen and fourteen were resolved after the completion of discovery and that they now withdraw those issues. The court also asked the defendants to brief the issues raised in "Defendants' Statement on Plaintiffs' Alleged Damages." The defendants have briefed issues one through three under the heading of "Exclusivity of Contract Remedies" and the damages issues under "Prejudgment Interest." The court will borrow those headings for its order.

reliance on the warranties of the June 1983 Stock Purchase Agreement ("SPA") to the exclusion of any actionable reliance on the defendants' disclosures and omissions.[2] According to the defendants, the SPA warranties were the result of the plaintiffs not trusting the defendants and not believing that the defendants had disclosed all material information. The defendants argue this is established as a matter of law by several circumstances admitted by the plaintiffs in different pleadings.

The defendants argue that the following pleadings, filings and testimony evidence the plaintiffs' admitted mistrust of the defendants. In the 1982 case, the plaintiffs alleged, *inter alia*, that the defendants in breach of their fiduciary duties had withheld information from the Board of Directors and otherwise acted unlawfully and fraudulently so as to pressure "stockholders to sell their stock to the Company at a fraction of its actual value." (Dk.645, Ex. A.) Even though the defendants had proposed to settle the 1982 lawsuit by buying the plaintiffs' shares for more than the appraised value given by the plaintiffs' investment bankers who had investigated Koch Industries Incorporated, ("KII"), and even though the plaintiffs were being advised by financial advisers and experienced lawyers, the plaintiffs remained suspicious to the point of insisting upon certain warranties being included in the SPA. The defendants consider these facts undisputed based upon the plaintiffs' allegations in their third-amended complaint[3] and in their mandamus petition[4] to the Tenth Circuit and upon the testimony[5] of William Koch.

2. The court does not consider this argument to have been decided in its prior summary judgment rulings.

3. The defendants refer, *inter alia*, to the following allegations from the third-amended complaint:

31.... Because of the extreme secrecy in which information about Koch Industries was kept and time constraints created by Koch Industries, plaintiffs were unable to conduct a full investigation of Koch Industries, and because Goldman Sachs did not have accurate information necessary to value Koch Industries in the Spring of 1983, the selling price was negotiated based upon certain representations of Koch Industries and its management, including defendants Charles Koch and David Koch. Plaintiffs relied upon those representations and, therefore, insisted on provisions in section 5 of the Stock Purchase and Sale Agreement that would cause the company, Koch Industries, as well as defendants Charles Koch and David Koch, to make warranties to the sellers concerning both the financial condition and the operations of the company.
....
37. In reliance upon the foregoing continuing warranties of Koch Industries, Charles Koch and David Koch, on or about June 10, 1993, plaintiffs assigned and delivered all of their shares in Koch Industries to Koch Industries, the buyer under the Stock Purchase and Sale Agreement, in exchange for cash and an undivided interest in certain specified property. The assignment and delivery of the shares of plaintiffs was made pursuant to and in reliance upon the representations of defendants and the terms and conditions of the Stock Purchase and Sale Agreement, dated June 4, 1983.
....

38G. The plaintiffs bargained for and relied upon the Warranties and defendants' compliance with the Warranties, including the accuracy and completeness of the representations of defendants, in valuing Koch Industries and their Koch Industries stock, and in deciding whether to sell.

4. The defendants quote, in relevant part, the following from this pleading filed with the Tenth Circuit:

Because of the global scope of Koch Industries' operations, and the secrecy with which those operations had been conducted, plaintiffs had no opportunity to conduct a meaningful evaluation of the worth of Koch Industries' assets and thus, of the true value of the 48% equity in the Company.... [P]laintiffs insisted that, as a condition precedent to any such sale, Koch Industries warrant in writing the accuracy of the financial information which the Company furnished to the plaintiffs and agree that the warranties given would survive the closing of any sale of their stock. The Company did so. Relying upon those warranties, plaintiffs sold all of their stock in the Company to defendants and dismissed the lawsuit then pending....
Given the prior conduct of Charles Koch and his supporters on the board of directors toward minority shareholders and management's longstanding passion for conducting the company's operations in strict secrecy, these warranties—and the stipulation that their enforceability would survive the closing of the Stock Purchase Agreement—were a required condition to the plaintiffs' willingness to sell their forty-eight percent stock interest.

5. The defendants quote the following from page 2375 of William Koch's deposition:

The defendants argue that the plaintiffs' suspicion and mistrust of the defendants and their insistence on explicit contractual warranties precludes them from alleging and proving under their other legal theories—common-law fraud, federal securities fraud, and breach of fiduciary duty—that they were relying on the defendants to disclose truthfully all material information. The defendants maintain that, as a matter of law, the plaintiffs relied instead on their ability to sue on these warranties in the event of a breach.

In large part, the defendants stake their position on *Slaymaker v. Westgate State Bank*, 241 Kan. 525, 739 P.2d 444 (1987). In *Slaymaker*, the plaintiff sued for fraud alleging that he had purchased a 1962 Triumph TR–3 based on written and verbal representations that the car had only 528 miles, had not been restored, and was in its original condition. Before purchasing the car, the plaintiff told the seller about his concerns with the seller's representation about the car's original condition. The plaintiff also inspected the car himself looking for signs of reconditioning. Despite this conversation and his inspection, the plaintiff still had doubts and again told the seller that he was reluctant to accept the truthfulness of the seller's representations. The seller responded this time by offering a buy-back provision if the car turned out not to be as represented. The plaintiff testified that this offer ultimately induced him to buy the car.

The district court granted partial summary judgment on the plaintiff's fraud claim finding that the plaintiff had failed to prove reliance on the alleged misrepresentations. The Kansas Supreme Court affirmed. Though misrepresentations need not be the exclusive cause of the plaintiff's injury, they must be the "moving cause," that is, without those representations the "plaintiff would not have acted to his detriment." 241 Kan. at 532, 739 P.2d 444. Slaymaker admitted that he actively doubted the representations on the car's originality and that his doubt was " 'offset' only by" the buy-back provision. 241 Kan. at 533, 739 P.2d 444. The Kansas Supreme Court acknowledged the rule that "[t]he mere presence of a warranty will not ordinarily prevent liability where the plaintiff has also relied on the fraudulent misrepresentations of another." 241 Kan. at 533, 739 P.2d 444. It further observed that the courts were divided over whether a plaintiff can rely on representations after insisting on a warranty as a precondition to entering into the transaction. *Id.* The Kansas Supreme Court applied these rules in the following way:

[I]n the instant case, it is not the presence of a warranty *alone* that prevents a finding of justifiable reliance. In none of the cases cited above did the plaintiffs face suspicious circumstances which caused them to entertain actual doubts of the truthfulness of the fraudulent misrepresentations. In neither of these cases did the plaintiffs seek to relieve those doubts by requiring a warranty. We are not presented with the simple case in which the tortfeasor adds a warranty to his misrepresentations, or where the victim requires a warranty as a part of his normal course of business. In the present case, defendant['s] ... promise to rescind the contract if the car was not in original condition is important because it reflects plaintiff's consistent refusal to believe the representations of original condition.

. . . .

Plaintiff did not rely on the *truthfulness* of the sign at the Tulsa auto auction because he never believed it was true. Plaintiff actively doubted the truth of the claims of "original" condition. . . .

. . . .

Plaintiff, according to his own testimony, did not rely upon a belief that the representations of "original" condition were true. He actively doubted whether they were true. Rather, what plaintiff relied

I remember telling Arthur that I would not do the deal unless there were very strong representations and warranties and I remember telling him, furthermore, I would not do the deal unless David and Charles signed the representations and warranties. I remember Jimmy Linn being present and discussing with him how long it would take to do the due diligence, what we could find out in the due diligence versus the representations and warranties and saying his agreeing with me that in lieu of due diligence that we would take very strong reps and warranties but they were a deal breaker.

upon was the *possibility* that they might be true, coupled with the knowledge that he could rescind the transaction if they were not true.

241 Kan. at 534–35, 739 P.2d 444. The Kansas Supreme cited in support of this discussion the decision of *Humphrey v. Merriam,* 32 Minn. 197, 20 N.W. 138 (1884), and the Restatement (Second) of Torts § 548 (1976) with its corresponding comment.

The defendants argue that the plaintiffs here, just like the plaintiff in *Slaymaker,* actively doubted the completeness and truthfulness of the defendants' disclosure and, thus, insisted upon the warranties found in the SPA. The defendants point to the broad releases that the plaintiffs signed while being fully represented in the negotiations by counsel. According to the defendants, "[t]he settling plaintiffs were willing to give such a broad release, so long as their bargained-for warranties survived the closing and any investigation that might have been made." (Dk.645, p. 7). Citing a line of decisions from other jurisdictions, the defendants argue that when a release occurs in settlement of fraud and breach of fiduciary duty claims the element of justifiable reliance cannot be proved to set aside the release. Based on these arguments, the defendants ask the court to dismiss as a matter of law the plaintiffs' tort and securities law theories and to limit the plaintiffs' claims for trial to a breach of warranty theory.

*Analysis*

This is not a summary judgment proceeding. The defendants do not directly challenge the sufficiency of the plaintiffs' evidence. Neither side invokes summary judgment procedures, and the court does not consider them applicable to the defendants' brief. When it asked the parties to brief thirteen and fourteen of the defendants' issues of law, the court assumed there would be questions of law ripe for ruling. Based on what has been argued and the procedural posture of this case, the court believes the following to be that issue of law. Have the plaintiffs made judicial admissions concerning their reliance on the contractual warranties that preclude them from proving reliance on the defendants'

disclosure of information relevant in determining KII's value? The court's analysis of this issue begins with deciding whether the plaintiffs have made any binding judicial admissions concerning their reliance on the contractual warranties.

 " 'Judicial admissions are formal admissions ... which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact.' " *Guidry v. Sheet Metal Workers Intern. Ass'n, Local 9,* 10 F.3d 700, 716 (10th Cir. 1993) (quoting *American Title Ins. Co. v. Lacelaw Corp.,* 861 F.2d 224, 226 (9th Cir. 1988)), *cert. denied,* 514 U.S. 1063, 115 S.Ct. 1691, 131 L.Ed.2d 556 (1995). The Seventh Circuit recently explained judicial admissions in these terms:

> Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them. They may not be controverted at trial or on appeal. Indeed, they are "not evidence at all but rather have the effect of withdrawing a fact from contention." Michael H. Graham, *Federal Practice and Procedure: Evidence* § 6726 (Interim Edition); *see also* John William Strong, *McCormick on Evidence* § 254, at 142 (1992). A judicial admission is conclusive, unless the court allows it to be withdrawn; ordinary evidentiary admissions, in contrast, my be controverted or explained by the party. *Id.* When a party testifying at trial or during a deposition admits a fact which is adverse to his claim or defense, it is generally preferable to treat that testimony as solely an evidentiary admission. Michael H. Graham, *Federal Practice and Procedure* § 6726, at 536–37.

*Keller v. United States,* 58 F.3d 1194, 1198 n. 8 (7th Cir.1995). A statement or assertion of fact in a complaint or other pleading may serve as a judicial admission. *Sicor Ltd. v. Cetus Corp.,* 51 F.3d 848, 859 (9th Cir.), *cert. denied,* 516 U.S. 861, 116 S.Ct. 170, 133 L.Ed.2d 111 (1995); *Schott Motorcycle Supply v. American Honda Motor Co.,* 976 F.2d 58, 61 (1st Cir.1992). "[S]tatements made in briefs may be considered admissions at the court's discretion." *Guidry,* 10 F.3d at 716 (citing *Plastic Container Corp. v. Continen-*

*tal Plastics of Okla., Inc.,* 607 F.2d 885, 906 (10th Cir.1979), *cert. denied,* 444 U.S. 1018, 100 S.Ct. 672, 62 L.Ed.2d 648 (1980)).

■ Courts, however, will not construe assertions as judicial admissions where inconsistent facts are alleged as part of alternative or hypothetical pleadings in the same case. *Schott Motorcycle Supply,* 976 F.2d at 61; *Garman v. Griffin,* 666 F.2d 1156, 1159 (8th Cir.1981). Such a rule is consistent with the liberal pleading policies embodied in Rule 8 of Federal Rules of Civil Procedure. *McCalden v. California Library Ass'n,* 955 F.2d 1214, 1219 (9th Cir.1990), *cert. denied,* 504 U.S. 957, 112 S.Ct. 2306, 119 L.Ed.2d 227 (1995); *Garman,* 666 F.2d at 1159–60.

■ To prevail on their argument, the defendants must demonstrate the plaintiffs' assertions amount to judicial admissions that the plaintiffs actually doubted the accuracy of the defendants' disclosures, that the plaintiffs' doubts were offset only by the SPA warranties, and that the plaintiffs disregarded the likelihood of the defendants' disclosures being inaccurate because of the defendants' ultimate liability under the SPA warranties.[6] What the defendants cite as admissions seem more accurately characterized as isolated allegations in support of alternative theories of liability. The plaintiffs did allege that the KII was extremely secretive about information on itself and that the plaintiffs were unable to conduct a full investigation of KII because of time constraints. This allegation, however, does not say that throughout the settlement negotiations the plaintiffs actually doubted the truthfulness and accuracy of the defendants' disclosures concerning KII. As liberally construed by the court, this allegation indicates instead that the warranties were primarily given in lieu of the due diligence inquiry that the plaintiffs normally would have conducted[7] but for the defendants' position and the time constraints. The plaintiffs do allege reliance on the SPA warranties, but they do not allege that their reliance on the warranties was to the exclusion of or in lieu of any reliance on the truthfulness of the defendants' disclosures. *Cf. Kelley Metal Trading Co. v. Al–Jon/United, Inc.,* 835 F.Supp. 1339, 1343 (D.Kan.1993) (no evidence that plaintiff actively doubted certain representations and insisted on the buy-back clause because of these representations). Indeed, the plaintiffs' third-amended complaint plainly alleges reliance on both misrepresentations and warranties.[8] The plaintiffs' brief is replete with citations to the third-amended complaint of those instances where they have alleged reliance on more than the warranties. When construed in their proper context, the plaintiffs' allegations cited by the defendants do not constitute judicial admissions from which this court could find as a matter of law that the plaintiffs' reliance on the defendants' misrepresentations and omissions was not "part of the moving cause" and that absent the misrepresentations and omissions the plaintiffs would still have sold their shares on these terms. The terms of the plaintiffs'

**6.** In *Slaymaker,* the Kansas Supreme Court avoided taking a position on whether the plaintiff's insistence on a warranty standing alone would prevent a finding of justifiable reliance on other representations. The court pointed to several other circumstances, along with the warranty, that prevented a finding of reliance: (1) the plaintiff faced suspicious circumstances that caused him to actually doubt the truthfulness of the representations; (2) the plaintiff admitted his doubts were "offset" only by the warranty; and (3) the "plaintiff consciously disregarded the acknowledged possibility or probability" that the representations were not true because of his ability to rescind the transaction under the buy-back provision. 241 Kan. at 534–35, 739 P.2d 444. In short, the court found that the plaintiff did not rely upon the representations being true, rather he "relied upon ... the *possibility* that they might be true, coupled with the knowledge that

he could rescind the transaction if they were not true." 241 Kan. at 535, 739 P.2d 444.

**7.** In *Slaymaker,* the Kansas Supreme Court distinguished the pending matter from "the simple case in which the tortfeasor adds a warranty to his misrepresentations or where the victim requires a warranty as a part of his normal course of business." 241 Kan. at 534, 739 P.2d 444.

**8.** One of the plainest examples of the plaintiffs alleging reliance on both the warranties and the misrepresentations appears at ¶ 37 of the third-amended complaint. The plaintiffs allege that: "The assignment and delivery of the shares of plaintiffs was made pursuant to and in reliance upon the representations of defendants and the terms and conditions of the Stock Purchase and Sale Agreement, dated June 4, 1983." (emphasis added).

releases do not establish as a matter of law the plaintiffs' reliance on warranties to the exclusion of other disclosures and omissions.[9] In short, from what has been presented and argued, the court cannot find that as a matter of law the plaintiffs acted in reliance on their ability to sue to recover damages for breach of the bargained-for SPA warranties and not in reliance on the truthfulness and accuracy of the defendants' disclosures. The court denies the defendants' requested relief on this issue.

## PREJUDGMENT INTEREST

 Federal law governs an award of prejudgment interest on a federal securities law claim. *U.S. Industries, Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1255 (10th Cir. 1988). Under federal common law, the decision whether to award prejudgment interest rests within the court's sound discretion in balancing the different equitable considerations. *Motion Picture Ass'n of America, Inc. v. Oman*, 969 F.2d 1154, 1157 (D.C.Cir. 1992).; *U.S. Industries, Inc. v. Touche Ross & Co.*, 854 F.2d at 1255 n. 43. Prejudgment interest compensates for the time value of money, *Motion Picture Ass'n of America, Inc. v. Oman*, 969 F.2d at 1157, and " 'is an element of [plaintiff's] complete compensation,' " *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 175, 109 S.Ct. 987, 991, 103 L.Ed.2d 146 (1989). It compensates the injured party "for being deprived of the monetary value of his loss from the time of the loss to the payment of the judgment." *U.S. Industries, Inc. v. Touche Ross & Co.*, 854 F.2d at 1256. Though "ordinarily awarded" unless "some justification" exists for denying it, prejudgment interest "is not recoverable as a matter of right." *Id.* The award is subject to " 'fundamental considerations of fairness.' " *Id.* (citation omitted). Thus, the trial court analyzes a demand for prejudgment interest under federal law by deciding first whether the award would serve to compensate the injured party and second whether the equities override the goal of compensating the plaintiff. *Id.; see Towerridge, Inc. v. T.A.O., Inc.*, 111 F.3d 758, 763–64 (10th Cir.1997).[10]

9. As argued by defendants, Kansas law does favor settlement and does not permit the repudiation of settlement agreements absent bad faith or fraud. *Fieser v. Stinnett*, 212 Kan. 26, 31, 509 P.2d 1156 (1973). The defendants cite a line of decisions from other jurisdictions holding that in settlement of fraud claims a party cannot justifiably rely on representations made by the allegedly dishonest party in connection with the compromise and settlement. *See, e.g., Finn v. Prudential–Bache Securities, Inc.*, 821 F.2d 581, 585–86 (11th Cir.1987); *Pettinelli v. Danzig*, 722 F.2d 706, 710 (11th Cir.1984); *Metrocall v. Continental Cellular*, 246 Va. 365, 437 S.E.2d 189, 194–95 (1993); *Jankovich v. Bowen*, 844 F.Supp. 743, 748 (S.D.Fla.1994); *but see Chase v. Dow Chemical Co.*, 875 F.2d 278, 283 (10th Cir.1989) (rejected the general proposition that "one is never justified in believing anything represented by an adversary to a dispute that involves a claim of fraud."). The defendants do not cite any Kansas case where such a proposition was recognized or applied in similar circumstances, nor has the court found any. Rather than extend this order with a discussion of this proposition and its consistency with relevant precedent, this court simply rejects the notion that it can rule at this time as a matter of law that the plaintiffs were not justified in relying on the alleged misrepresentations and omissions made in connection with the settlement of the earlier litigation. This proposition, however, may be an appropriate topic to include in the jury instruc-

tions on reliance. The defendants also throw out the argument that the hostile and adversarial relations between the parties precludes the plaintiffs from staking their reliance on the asserted fiduciary duty owed by Charles Koch and David Koch as corporate officers or insiders. Again, this may be a matter for the jury instructions, but it does not impact the court's finding above on the lack of judicial admissions.

10. The Supreme Court in *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 176, 109 S.Ct. 987, 991–92, 103 L.Ed.2d 146 (1989), listed some of factors relevant in deciding whether to grant prejudgment interest:

> In deciding if and how much prejudgment interest should be granted, a district court must examine ... matters encompassed within the merits of the underlying action. For example, in a federal securities action such as this case, a district court will consider a number of factors, including whether prejudgment interest is necessary to compensate the plaintiff fully for his injuries, the degree of personal wrongdoing on the part of the defendant, the availability of alternative investment opportunities to the plaintiff, whether the plaintiff delayed in bringing or prosecuting the action, and other fundamental considerations of fairness. (citations omitted). These considerations are intertwined in a significant way with the merits of the plaintiff's primary case as well as the extent of his damages.

State law governs an award of prejudgment interest on pendent state law claims. *U.S. Industries, Inc. v. Touche Ross & Co.,* 854 F.2d at 1255. Under Kansas law, it is a matter of judicial discretion to allow prejudgment interest. *Miller v. Botwin,* 258 Kan. 108, 119, 899 P.2d 1004 (1995). The general rule of law applicable to both tort and contract claims is that prejudgment interest is not allowable unless the claim for damages becomes liquidated.[11] *See, e.g., Royal College Shop v. Northern Ins. Co. of N.Y.,* 895 F.2d 670, 675 (10th Cir.1990) (contract); *Kilner v. State Farm Mut. Auto. Ins. Co.,* 252 Kan. 675, 686–87, 847 P.2d 1292 (1993) (contract); *Kearney v. Kansas Public Service Co.,* 233 Kan. 492, 505, 665 P.2d 757 (1983) (tort); *Sanders v. Park Towne, Ltd.,* 2 Kan.App.2d 313, 320, 578 P.2d 1131, *rev. denied,* 224 Kan. clxxxvii (1978) (tort).[12] An exception to this general rule exists " 'where necessary to arrive at full compensation, a court may in the exercise of its discretion award interest or its equivalent as an element of damages even where the primary damages are unliquidated.' " *Henderson v. Hassur,* 225 Kan. 678, 689, 594 P.2d 650 (1979) (quoting *Lightcap v. Mobil Oil Corporation,* 221 Kan. 448, Syl. ¶ 11, 562 P.2d 1, *cert. denied,* 434 U.S. 876, 98 S.Ct. 228, 54 L.Ed.2d 156 (1977)). Thus, a court has the discretion to award prejudgment interest on an unliquidated claim when the defendant keeps and makes actual use of the money, the plaintiff loses the use of the money, and the award of interest is necessary for full compensation. *Farmers State Bank v. Production Cred. Ass'n of St. Cloud,* 243 Kan. 87, 102, 755 P.2d 518 (1988); *Henderson v. Hassur,* 225 Kan. at 689–90, 594 P.2d 650. " 'Considerations of fairness and traditional equitable principles are to guide the exercise of this discretion.' " *Wichita Fed'l Savings & Loan Ass'n v. Black,* 245 Kan. 523, 544, 781 P.2d 707 (1989) (quoting *Lightcap,* 221 Kan. at 468, 562 P.2d 1).

Based on its understanding of federal law and Kansas law,[13] an award of prejudgment interest on the plaintiffs' unliquidated claims rests in sound judicial discretion of the court. In the event of a jury verdict for the plaintiffs, the court will conduct subsequent proceedings, if necessary, to determine whether an award of prejudgment interest is necessary, fair and equitable and to determine what rate of interest would be appropriate. The court intends to instruct the jury that they should not consider interest or the time value of money in their calculation of any damages.

## OTHER MATTERS

*Choice of Law.* The parties have stipulated to which law governs the different counts,

---

**11.** Kansas appellate courts do not make any real effort at distinguishing between tort or contract claims on the general law of prejudgment interest. There may be an arguable distinction based on certain decisions holding that prejudgment interest *must be awarded* on a liquidated claim for damages upon a contract that is either express or implied. *In re Tax Protests of Midland Industries, Inc.,* 237 Kan. 867, 868, 703 P.2d 840 (1985); *Federal Land Bank of Wichita v. Vann,* 20 Kan.App.2d 635, 641–42, 890 P.2d 1242 (1995). " 'A claim becomes liquidated when both the amount due and the date on which it is due are fixed and certain, or when the same becomes definitely ascertainable by mathematical computation.' " *Miller v. Botwin,* 258 Kan. 108, 119, 899 P.2d 1004 (1995) (citation omitted). Because the damages here plainly are not liquidated, this distinction is of no significance in this case.

**12.** The plaintiffs cite *Aetna Casualty and Surety Company v. Hepler State Bank,* 6 Kan.App.2d 543, 630 P.2d 721 (1981), and *Citizens State Bank v. Shearson Lehman Brothers, Inc.,* 874

F.Supp. 307 (D.Kan.1994), for the proposition that under Kansas law the award of prejudgment interest on "non-contract claims (such as plaintiffs' claims for fraud and for breach of fiduciary duty) presents no issue whether or not those claims are 'liquidated.' " (Dk. 649, p. 17 n. 13). Since the Kansas Supreme Court has the last word on matters of Kansas law, the court will follow the rules as stated in the cases of *Wichita Fed'l Savings & Loan Ass'n v. Black,* 245 Kan. 523, 544, 781 P.2d 707 (1989); *Kearney v. Kansas Public Service Co.,* 233 Kan. 492, 505, 665 P.2d 757 (1983); *Henderson v. Hassur,* 225 Kan. 678, 689, 594 P.2d 650 (1979). The plaintiffs' citation of *Aetna Casualty and Surety Company v. Hepler State Bank* is questionable, for the Kansas Court of Appeals' holding appears limited to conversion claims. "The rule of these authorities is that in case of conversion interest is allowed by way of damages." 6 Kan.App.2d at 553, 630 P.2d 721.

**13.** The court also took a quick glance at prejudgment interest law in Mississippi, Texas and Oklahoma.

except for count VI of the third amended complaint.[14] Asserted on behalf of the plaintiffs L.B. Simmons Energy, Inc. d/b/a Rocket Oil Company, Gay A. Roane, Ann Alspaugh, Louis Howard Andres Cox, Paul Anthony Andres Cox, Holly Antoinette Andres Cox Farabee and Ronald W. Borders ("Simmons plaintiffs"),[15] count VI alleges that the misrepresentations and omissions are actionable as common-law "fraud under the laws of Texas, Oklahoma, Mississippi, and possibly other states, and also ... [as violations of] Tex.Rev.Civ. Ann. art. 581–33 (Vernon 1964); Tex. Bus. & Com.Code § 27.01 (Vernon 1983); and Okla. Stat. Ann. tit. 15, §§ 57–60 (West 1983)." (Dk.522, ¶ 80). Consistent with that count, the plaintiffs have included as an issue of law the following:

> K. Whether the law of Texas, Oklahoma, and Mississippi govern the state and common law fraud claims of plaintiffs L.B. Simmons Energy, Inc. d/b/a Rocket Oil Company, Gay A. Roane, Ann Alspaugh, Louis Howard Andres Cox, Paul Anthony Andres Cox, Holly Andres Cox Farabee, and Ronald W. Borders, under Count VI of the Third Amended Complaint.

The Simmons plaintiffs refer to the law from these other states in opposing the defendant's brief concerning prejudgment interest.

The defendants argue the Simmons plaintiffs should be required to brief the applicability of these other states' laws in the event that the court allows the plaintiffs to assert more than the breach of warranty claims. The court agrees that in the absence of a stipulation the parties need to brief this issue in advance of trial. Having allowed the plaintiffs at this time to proceed on more than their warranty theory, the Simmons plaintiffs should promptly brief this choice of law issue. In doing so, the parties should consider the following statement of law.

■ In Kansas, tort actions are governed by the *lex loci delicti* doctrine, that is, the substantive law of the state where the tort occurred applies. *Ling v. Jan's Liquors,* 237 Kan. 629, 634, 703 P.2d 731 (1985). Under this doctrine, "the situs of the injury determines the governing law," even if the tortious act occurred in another state. *Id.* "In a misrepresentation or fraudulent omission claim, the 'last event' is the injury; the 'place of the wrong,' therefore, is where the loss is sustained, not where the fraud or misrepresentations were made." *Steele v. Ellis,* 961 F.Supp. 1458, 1463 (D.Kan.1997) (citations omitted). Thus, the governing law comes from the state where the plaintiff felt the effects of the fraud. *Maberry v. Said,* 911 F.Supp. 1393, 1399 (D.Kan.1995); *see Thomas v. Talbott Recovery Systems, Inc.,* 982 F.Supp. 794, 798–99 (D.Kan.1997) ("Because plaintiff alleges financial injury in this case, he felt the wrong in Kansas, where he is a resident."); *Bushnell Corp. v. ITT Corp.,* 973 F.Supp. 1276, 1286 n. 2 (D.Kan.1997) (similar statement).

■ *Punitive Damages.* Punitive damages are not available in a private action under Rule 10b–5. *deHaas v. Empire Petroleum Co.,* 435 F.2d 1223, 1232 (10th Cir. 1970). " '[B]ifurcation of trials is permissible in federal court even when such procedure is contrary to state law.' " *Shugart v. Central Rural Elec., Co-op.,* 110 F.3d 1501, 1504 (10th Cir.1997) (quoting *Oulds v. Principal Mut. Life Ins. Co.,* 6 F.3d 1431, 1435 (10th Cir.1993)). The court is giving serious consideration to bifurcating the trial so that the jury would decide in the first proceeding the defendants' liability for compensatory and exemplary damages and the amount of compensatory damages. If the jury found liability for exemplary damages, then the appropriate trier of fact would determine the amount of exemplary damages in the second proceeding.

In the event that the court were to bifurcate the proceedings in the manner described above, the court would modify its earlier order (Dk.517) filed August 24, 1992, to the

---

14. As stated in the pretrial order, the parties have stipulated that federal law governs counts I and II of the third amended complaint and that Kansas law govern counts III, IV, and V of the third amended complaint.

15. These plaintiffs refer to themselves as the "Simmons Plaintiffs." It should be noted that Louis Howard Andres Cox no longer appears in this suit as an individual plaintiff having voluntarily dismissed with prejudice his action against the defendants. (Dk.638).

extent that the defendants would not be required to produce evidence of their net worth unless the jury returned a verdict finding the defendants liable for exemplary damages.

*Proposed Pretrial Order.* Attached to this order is the court's final proposed pretrial order, which reflects the court's rulings on the parties' objections and makes other changes suggested by the court.[16] As for the court's rulings on the parties' objections, the court considers the record to have been made and would treat further comments on those rulings as if a motion to reconsider that is due no later than January 26, 1998. As for the other suggested changes, the parties will have until January 26, 1998, to file their written objections. The court shall consider any filed objections or additional comments and promptly enter the final pretrial order.

For the ease of the parties, the court has noted all changes and included all significant rulings within the proposed final pretrial order. The court intends to delete all language with lines through it and to add all language that is shaded. The court's rulings and reasons are bracketed and will be deleted from the final pretrial order. The court will attach the parties' witness lists to the final pretrial order.

IT IS THEREFORE ORDERED that the plaintiff's motion for leave to file surreply (Dk.652), and the Simmons plaintiffs' motion for leave to file surreply (Dk.653) are granted;

IT IS FURTHER ORDERED that the defendants are denied all relief requested in their brief concerning questions of law (Dk.645);

IT IS FURTHER ORDERED that the parties have until January 26, 1998, to file any written objections or comments concerning the final proposed pretrial order attached hereto.

---

**16.** To make a record of the parties' objections, the court also attached to this order the parties proposed pretrial order submitted in August of 1997.