**William I. KOCH, et al., Plaintiffs,**

v.

**KOCH INDUSTRIES, INC., et al., Defendants.**

**No. 85–1636–SAC.**

United States District Court, D. Kansas.

March 27, 1998.

Clifford L. Malone, Adams, Jones, Robinson & Malone, Wichita, KS, Thomas E. Wright, Wright, Henson, Somers, Sebelius, Clark & Baker, L.L.P., Topeka, KS, Harry L. Najim, Najim Law Offices, Wichita, KS, John T. Hickey, Jr., Alex Dimitrief, Kirkland & Ellis, Chicago, IL, Joseph F. Ryan, Lyne, Woodworth & Evarts, Boston, MA, Fred H. Bartlit, Jr., Bartlit, Beck, Herman, Palenchar & Scott, Chicago, IL, Donald E. Scott, Ellen A. Cirangle, Bartlit, Beck, Herman, Palenchar & Scott, Denver, CO, Gregory S. C. Huffman, L. James Berglund, II, Thompson & Knight, Dallas, TX, Russell E. Brooks, Milbank, Tweed, Hadley & McCloy, New York, NY, Stephen M. Joseph, Redmond & Nazar, L.L.P., Wichita, KS, Michael Paul Kirschner, Lee & Kirschner, P.L.L.C., Oklahoma City, OK, for William I. Koch, Oxbow Energy Inc., L. B. Simmons Energy Inc. dba Rocket Oil Company, United States Trust Company of New York, as Trustee, Spring Creek Art Foundation Inc., Gay A. Roane, Ann Alspaugh, Marjorie Simmons Gray, as Trustee, Northern Trust Company, as Trustee, Marjorie L. Simmons, as Trustee, Louis Howard Andres Cox, Paul Anthony Andres Cox, Holly A. Andres Cox Farabee, Frederick R. Koch, Nationsbank N.A., co-trustee of the Louis Howard Andres Cox Trusts B & D, plaintiffs.

James M. Armstrong, Robert L. Howard, Timothy B. Mustaine, Foulston & Siefkin L.L.P., Donald L. Cordes, Koch Industries, Inc., Wichita, KS, for Koch Industries Inc., Charles G. Koch, Sterling V. Varner, David H. Koch, Donald L. Cordes, Thomas M. Carey, defendants.

Michael W. Merriam, Gehrt & Roberts, Chartered, Daniel R. Lykins, Bryan, Lykins & Hejtmanek, P.A., Topeka, KS, for Kansas Press Association, Kansas Association of Broadcasters, Wichita Eagle–Beacon, Topeka Capital–Journal, WIBW–TV, Kansas City Star Company, The, Wichita Business Jour-

nal, Harris Enterprises, Inc., Koch Crime Comm, movants.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

Trial in this matter is commences on April 6, 1998. This memorandum and order addresses two of the outstanding issues in this case: (1) choice of law on certain claims and (2) bifurcation of the issue of punitive damages at trial.

### Choice of Law

In its January 14, 1998, memorandum and order, *see Koch v. Koch Industries, Inc.*, 996 F.Supp. 1273 (D.Kan.1998), the court requested certain plaintiffs to address the choice of law issue pertaining to Count VI of the plaintiffs' Third Amended complaint. Count VI alleges that the misrepresentations and omissions are actionable as common-law "fraud under the laws of Texas, Oklahoma, Mississippi, and possibly other states, and also ... [as violations of] Tex.Rev.Civ. Ann. art. 581–33 (Vernon 1964); Tex. Bus. & Com.Code § 27.01 (Vernon 1983); and Okla. Stat. Ann. tit. 15, §§ 57–60 (West 1983)." (Dk. 522, P 80). Consistent with that count, the plaintiffs have included as an issue of law the following:

> K. Whether the law of Texas, Oklahoma, and Mississippi govern the state and common law fraud claims of plaintiffs L.B. Simmons Energy, Inc. d/b/a Rocket Oil Company, Gay A. Roane, Ann Alspaugh, Louis Howard Andres Cox, Paul Anthony Andres Cox, Holly Andres Cox Farabee, and Ronald W. Borders, under Count VI of the Third Amended Complaint.

In briefing the choice of law issue, the court instructed the parties to consider the following statement of law:

> In Kansas, tort actions are governed by the *lex loci delicti* doctrine, that is, the substantive law of the state where the tort occurred applies. *Ling v. Jan's Liquors*, 237 Kan. 629, 634, 703 P.2d 731 (1985). Under this doctrine, "the situs of the injury determines the governing law," even if the tortious act occurred in another state. *Id.* "In a misrepresentation or fraudulent omission claim, the 'last event' is the injury; the 'place of the wrong,' therefore, is where the loss is sustained, not where the

fraud or misrepresentations were made." *Steele v. Ellis*, 961 F.Supp. 1458, 1463 (D.Kan.1997) (citations omitted). Thus, the governing law comes from the state where the plaintiff felt the effects of the fraud. *Maberry v. Said*, 911 F.Supp. 1393, 1399 (D.Kan.1995); *see Thomas v. Talbott Recovery Systems, Inc.*, 982 F.Supp. 794, 798 (D.Kan.1997) ("Because plaintiff alleges financial injury in this case, he felt the wrong in Kansas, where he is a resident."); *Bushnell Corp. v. ITT Corp.*, 973 F.Supp. 1276, 1286 n. 2 (D.Kan.1997) (similar statement).

1998 WL 79151 at *6. As ordered by the court, the plaintiffs have briefed the issue, the defendants have responded and the plaintiffs have replied.

### Overview

Although not expressly discussed by the parties, the choice of law issue implicated by these claims is significant as it pertains to certain plaintiffs. During the relevant time frame, some of the plaintiffs resided outside of Kansas—in Mississippi, Oklahoma or Texas. Other plaintiffs are trusts asserting claims on behalf of their beneficiaries—a fact which posits the additional conundrum of deciding whether the residence of the trustees or the beneficiaries is controlling on the choice of law issue. The choice of law issue is important for this reason: Although the elements of fraud under Kansas law are apparently very similar to those imposed by Mississippi and Oklahoma law, under the law of Texas a plaintiff may recover actual damages for fraud without proving the defendant's knowledge of falsity of a material fact. *See* Tex. Bus. & Com.Code § 27.01. In Kansas, the plaintiff must prove the defendants' knowledge of falsity of a material fact to establish fraud. *See Albers v. Nelson*, 248 Kan. 575, Syl. ¶ 5, 809 P.2d 1194 (1991) ("Actionable fraud includes an untrue statement of fact, known to be untrue by the party making it, which is made with the intent to deceive or recklessly made with disregard for the truth, where another party justifiably relies on the statement and acts to his or her injury and damage.").

## Plaintiffs' Position

According to the Simmons plaintiffs' brief, "[b]ecause the elements of a fraud action under the laws of Oklahoma and Mississippi are apparently duplicative of the law of Kansas, certain of the Simmons Plaintiffs have decided to waive their alternative fraud claims in Count VI under Oklahoma and Mississippi laws and to rely instead on the Kansas fraud claims asserted in Count VI of the Third Amended Complaint, based on the Defendants' acceptance of Kansas law as an appropriate choice of law." Similarly, NationsBank, N.A., on behalf of the Cox trusts, agrees that Oklahoma law is similar to Kansas law, and, "for the sake of simplicity," "prays that Kansas law be applied to the claims asserted by it."

Although these concessions reduce the complexity of the choice of law issue, it does not dispose of it entirely. According to the Simmons plaintiffs' brief, the evidence will establish that Gay A. Roane and Holly Andres Cox Farabee were each residents of Texas during 1983. Accordingly, they contend that the law of Texas applies to their individual claims of fraud and misrepresentation under Count VI of the complaint. The claims asserted by the sixteen Simmons plaintiffs' trusts raise an even more complex choice of law issue: Is the choice of law for the plaintiffs' fraud claims determined by the residence of the trustees or the residence of the beneficiaries? Finding no Kansas case law, the Simmons plaintiffs cite a case which they contend suggests that the residence of the trustee is normally the fact fixing the choice of law, see *Sack v. Low,* 478 F.2d 360, 366 (2nd Cir.1973),[1] and another case which suggests that the residence of the beneficiary should be used for choice of law purposes, see *Appel v. Kidder, Peabody & Co., Inc.,* 628

F.Supp. 153 (S.D.N.Y.1986). Under the Simmons plaintiffs' analysis, the choice of law issue would be determined based upon the court's decision to follow either the *Sack* or *Appel* rule. One trust (the Ann Alspaugh Trust) was administered by a Texas resident on behalf of a Texas resident. An additional eight of the trusts (Gay Roane Trusts B & C, Gaylan Roane Trusts B & D, G. Grant Roane Trusts B & D, and Marjorie Roane Trusts B & D) were formed in Texas and administered by a Texas resident trustee on behalf of Texas beneficiaries. Two of the trusts were created in Texas (Holly Cox [now Farabee] Trusts B & D), administered by a Massachusetts resident for the benefit of a Texas resident.[2]

The balance of the remaining trusts pose no choice of law concern to the Simmons plaintiffs. Because the remaining five trusts (Ann Alspaugh Cox Trust B & C, Paul Cox Trusts B & D, and Howard B. Alspaugh Trust B) were either administered by Oklahoma residents on behalf of either Oklahoma or Mississippi residents, "for the sake of simplicity" the Simmons plaintiffs agree that the law of Kansas should be applied to those trusts.

## Defendants' Position

The defendants diametrically oppose the Simmons plaintiffs' attempt to assert their common law tort claims on any law other than the law of Kansas. The defendants contend that "the Kansas Supreme Court would clearly apply a **single** law, **Kansas** law, to the common law tort claims of **all** the plaintiffs in this case, and this Court must as well." The defendants go on to argue that "any sincere attempt to apply the traditional *lex loci delicti* doctrine under the facts of this

---

1. The court is uncertain whether *Sack* definitively stands for the proposition that the residence of the trustee, rather than the residence of the beneficiary, determines where the loss is sustained. In *Sack,* the plaintiffs, who were all residents of Massachusetts, were trustees of a Massachusetts profit sharing trust. As the word "beneficiary" does not appear anywhere in the opinion, the issue of whether the residence of the trustees or the residence of the beneficiaries determines where the loss is sustained for purposes of choice of law analysis may never have been raised. It is also possible that the beneficiaries of the trust were also residents of Massachusetts. In any

event, it is difficult to glean a definitive rule from *Sack* that could be applied in this case. The court would agree, however, that the court in *Sack* suggested that the location of the trustees and the place that they conducted business is the focal point for determining where the loss was sustained for purposes of choice of law analysis.

2. "Given Texas law is the choice of law for many of the other trusts, the Simmons Plaintiffs suggest that Texas law should apply to these latter two trusts' claims as well." Simmons Plaintiffs' Brief on Choice of Law (Dk. 684) at 6.

case, considering the claims of a single plaintiff in isolation from the claims of the other plaintiffs, is extremely difficult and uncertain, degenerates into abstractions reminiscent of the disputes of medieval theologians, and is more likely to end up with Kansas law, or New York law, than with Texas or Massachusetts law."

Decocted to its simplest form, the defendants essentially argue that this case—a case involving hundreds of millions of dollars and a myriad of complex factual and legal issues—is one in which the Kansas Supreme Court would find the application of only one law, the law of Kansas, to be appropriate. In support of that contention, the defendants primarily rely on two Kansas cases: *Shutts v. Phillips Petroleum Co.*, 235 Kan. 195, 679 P.2d 1159 (1984), *aff'd in part, reversed in part*, 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985) and *Gray v. Amoco Production Co.*, 1 Kan.App.2d 338, 564 P.2d 579 (1977), *reversed in part*, 223 Kan. 441, 573 P.2d 1080 (1978).[3] The defendants acknowledge that *Shutts* was subsequently overruled by the United States Supreme Court, but contend that the "application of a single law, Kansas law" rule announced in *Shutts* remains good law.

In the alternative, the defendants argue that even under the *lex loci delicti* doctrine, it still remains uncertain whether the law of Kansas, Texas, Massachusetts or New York law applies, for any of those places may qualify as candidates for "place of wrong"— the place where the stock transfers were recorded (Kansas), the place where the escrow agent gathered the plaintiffs' stock certificates and transferred them to Koch Industries after receiving the $1.1 billion payment (New York), the place where the stock certificates had been located prior to the transaction (unknown), or the place where the escrow agent actually delivered the payment to the plaintiff (unknown). The defendants also suggest that the Supreme Court of Kansas, confronted with the circumstances of this case, might embrace the more flexible "most significant relationship" test set forth in *Restatement (Second) of Conflict of Laws* § 188 (1971).

## Analysis

"When deciding state-law claims under diversity or supplemental jurisdiction, federal courts apply the choice-of-law rules of the jurisdiction in which they sit." *Ideal Electronic Security Co., Inc., v. International Fidelity Ins. Co.*, 129 F.3d 143, 148 (D.C.Cir. 1997). *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Glennon v. Dean Witter Reynolds, Inc.*, 83 F.3d 132, 136 (6th Cir. 1996) ("In federal question cases, a District Court entertaining pendent state claims should follow the choice of law rules of the forum state."). "It is neither the prerogative nor the function of the federal district court to challenge the wisdom of or to change the forum state's conflict of law principles." *Ritchie Enterprises v. Honeywell Bull, Inc.*, 730 F.Supp. 1041, 1046 (D.Kan.1990).

█ The court agrees that this case is unique in both its size and complexity. Simplifying this case, either factually or legally, would obviously be of great benefit to the jury.[4] Although the defendants' "application of a single law" rule is facially appealing in terms of simplifying this case, the court believes the Supreme Court's decision in *Shutts*, as well as the Kansas Supreme Court's decision following the Supreme court's decision, virtually compels its rejection.

---

**3.** A close reading of *Gray*, a case decided eight years before the Supreme Court's decision in *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985), does not compel the "application of a single rule of law" advanced by the defendants. In *Gray*, the Kansas Court of Appeals simply found that Amoco had not demonstrated that the law of any other forum applied:

> Amoco has not established to our satisfaction the need to apply to this case any law other than the law of Kansas. Amoco offers no

guidance as to what choice of law rules apply or how the choice of law problems should be characterized. The general rule is that the law of the forum applies unless it is expressly shown that a different law governs, and in case of doubt, the law of the forum is preferred. *Gray*, 1 Kan.App.2d at 341, 564 P.2d 579.

**4.** In presenting this case to the jury, the court strongly encourages the parties, to the extent possible, to decoct this case to its most simple, cogent and logical form.

In *Shutts* 28,100 royalty owners, including residents of all fifty states, the District of Columbia, the Virgin Islands, and several foreign countries, brought a class action suit against Phillips Petroleum for recovery of interest on suspended gas royalties. After concluding that Kansas had in personam jurisdiction over the nonresident class members, the district court went on to hold that as to the choice of law issue, Kansas law applied. The Kansas Supreme Court affirmed, finding that "[c]ompelling reasons do not exist to require this court to look to other state laws to determine the rights of the parties involved in this lawsuit."

Phillips Petroleum appealed to the Supreme Court. Although the Supreme Court agreed with the Kansas Supreme Court "that the protection afforded the plaintiff class members by the Kansas statute satisfies the Due Process Clause," 472 U.S. at 814, 105 S.Ct. 2965, it did not agree with the Kansas Supreme Court's choice of law analysis. The Supreme Court agreed that if the law of Kansas did not conflict in any material way with the law of any other jurisdiction connected with the case, there would be no injury in applying the law of Kansas. The Supreme Court noted apparent inconsistencies between the law of Kansas and other forums but apparently did not definitively determine whether the law of Kansas was substantively different from the law of other forums connected with the case. The Supreme Court held that the Due Process and Full Faith and Credit Clauses place a "modest" restriction on the operation of state choice-of-law rules. 472 U.S. at 818. "[F]or a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant aggregation of contacts, creating state interests, such that choice of its laws is neither arbitrary nor fundamentally unfair.'" *Id.* (quoting *Allstate Ins. Co. v. Hague,* 449 U.S. 302, 312–13, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981) (plurality)).[5]

Ultimately, the Supreme Court concluded:

Kansas must have a "significant contact or significant aggregation of contacts" to the claims asserted by each member of the plaintiff class, contacts "creating state interests," in order to ensure that the choice of Kansas law is not arbitrary or unfair. *Allstate,* 449 U.S., at 312–313, 101 S.Ct., at 639–640. Given Kansas' lack of "interest" in claims unrelated to that State, and the substantive conflict with jurisdictions such as Texas, we conclude that application of Kansas law to every claim in this case is sufficiently arbitrary and unfair as to exceed constitutional limits.

When considering fairness in this context, an important element is the expectation of the parties. *See Allstate, supra,* 449 U.S., at 333, 101 S.Ct., at 650 (opinion of POWELL, J.). There is no indication that when the leases involving land and royalty owners outside of Kansas were executed, the parties had any idea that Kansas law would control. Neither the Due Process Clause nor the Full Faith and Credit Clause requires Kansas "to substitute for its own [laws], applicable to persons and events within it, the conflicting statute of another state," *Pacific Employers Ins. Co. v. Industrial Accident Comm'n,* 306 U.S. 493, 502, 59 S.Ct. 629, 633, 83 L.Ed. 940 (1939), but Kansas "may not abrogate the rights of parties beyond its borders having no relation to anything done or to be done within them." *Home Ins. Co. v. Dick, supra,* 281 U.S., at 410, 50 S.Ct., at 342.

Here the Supreme Court of Kansas took the view that in a nationwide class action where procedural due process guarantees of notice and adequate representation were met, "the law of the forum should be applied unless compelling reasons exist for applying a different law." 235 Kan., at 221, 679 P.2d, at 1181. Whatever practical reasons may have commended this rule to the Supreme Court of Kansas, for the reasons already stated we do not believe that

---

**5.** In *Allstate,* the Supreme Court stated: "In order to ensure that the choice of law is neither arbitrary nor fundamentally unfair, *see Alaska Packers Assn. v. Industrial Accident Comm'n,* 294 U.S. 532, 542, 55 S.Ct. 518, 79 L.Ed. 1044 (1935), the Court has invalidated the choice of

law of a State which has had no significant contact or significant aggregation of contacts, creating state interests, with the parties and the occurrence or transaction." 449 U.S. at 308, 101 S.Ct. 633 (citation omitted).

it is consistent with the decisions of this Court. We make no effort to determine for ourselves which law must apply to the various transactions involved in this lawsuit, and we reaffirm our observation in *Allstate* that in many situations a state court may be free to apply one of several choices of law. But the constitutional limitations laid down in cases such as *Allstate* and *Home Ins. Co. v. Dick, supra,* must be respected even in a nationwide class action. *Id.* at 821–22, 105 S.Ct. 2965 (footnote omitted). The Supreme Court remanded the case "for further proceedings not inconsistent with this opinion."

On remand, the Seward County, Kansas, district court reviewed the laws of the other states connected with the case but found no conflicts existed with the laws of Kansas on the issues of liability and applicable interest rate. Phillips again appealed to the Kansas Supreme Court, arguing that the district court on remand failed to follow the Supreme Court's decision and that the laws of Kansas conflict with the laws of other forums connected to the case. The Kansas Supreme Court engaged in an analysis of the law of other relevant forums, ultimately applying the damage laws of Texas, Oklahoma, Louisiana, New Mexico and Wyoming to persons holding leases in those states. *See Shutts v. Phillips Petroleum Co.,* 240 Kan. 764, 732 P.2d 1286 (1987), *cert. denied,* 487 U.S. 1223, 108 S.Ct. 2883, 101 L.Ed.2d 918 (1988).

Among other things, conflict of laws principles are generally intended to serve the laudable goal of fostering fair and reasonable results in legal disputes. *See Restatement (Second) of Conflict of Laws* § 6(2) (1971).[6] In light of the Supreme Court's holding in *Shutts,* the court does not believe it can only apply only the law of Kansas in this case without doing serious violence to Kansas choice of law principles and the constitutional principles that constrain their application.

Even assuming that the "single application of law" rule the defendants have extracted from *Shutts* was still good law, the obvious problems attendant with dealing with the law of fifty or more forums is easily distinguishable from the convolutions involved in this case.

■ Nor can the court accept the defendants' invitation to adopt the "most significant relationship" test set forth in the *Restatement (Second) of Conflict of Laws* § 188. Although the Kansas Supreme Court "reserve[d] consideration of the Restatement's 'most significant relationship' test for another day" in *St. Paul Surplus Lines Ins. Co. v. International Playtex, Inc.,* 245 Kan. 258, 270, 777 P.2d 1259 (1989), *cert. denied,* 493 U.S. 1036, 110 S.Ct. 758, 107 L.Ed.2d 774 (1990), since that time it has consistently followed the *lex loci* rule. *See, e.g., Safeco Ins. Co. of America v. Allen,* 262 Kan. 811, 822, 941 P.2d 1365 (1997) ("In [*State Farm Mut. Auto Ins. Co. v.*] *Baker,* [14 Kan.App.2d 641, 797 P.2d 168 (1990), *rev. denied,* 247 Kan. 705 (1990) ] the Court of Appeals correctly noted that where there is a conflict of laws, Kansas follows the general rule that the law of the state where the insurance contract is made controls. *See* 14 Kan. App.2d at 644, 797 P.2d 168, In *St. Paul Surplus Lines Ins. Co. v. International Playtex, Inc.,* 245 Kan. 258, 270, 777 P.2d 1259 (1989), *cert. denied,* 493 U.S. 1036, 110 S.Ct. 758, 107 L.Ed.2d 774 (1990), we observed that Kansas follows the *lex loci* rule, not the "most significant relationship" rule set out in Restatement (Second) of Conflict of Laws § 188 (1969)."). It is not for this court to unilaterally modify that choice of law rule for purposes of simplifying this case.

■ Having rejected the "application of a single law, Kansas law" rule proposed by the defendants, the court must now resolve the issue of where the place of wrong or where

---

6. The text of § 6(2), titled "Choice of Law Principles," states:

(2) When there is no [state statutory directive on choice of law] the factors relevant to the choice of the applicable rule of law include
  (a) the needs of the interstate and international systems,
  (b) the relevant policies of the forum,
  (c) the relevant policies of other interested states and the relative interests of those

states in the determination of the particular issue,
  (d) the protection of justified expectations,
  (e) the basic policies underlying the particular field of law,
  (f) certainty, predictability and uniformity of result, and
  (g) ease in the determination and application of the law to be applied.

the loss was sustained, and in turn whether the residence of the trustees or the beneficiaries is controlling on the choice of law issue. As to the defendants' suggestion that the "loss" attributable to fraud could have occurred in any of a number of forums, the court is satisfied that the residence of the beneficiary of the trust, not the location of the trustee, is the place where the "loss" is felt for purposes of choice of law analysis. *See Appel,* 628 F.Supp. at 156 (" '[T]he thrust of the inquiry' is 'who became poorer, and where did they become poorer' as a result of the conduct complained of." "In this case, the clear answer is that the trust beneficiaries, predominantly the plaintiffs and members of their family became poorer in Connecticut [the plaintiffs' residence], if anywhere, and under the New York borrowing statute it is Connecticut's limitation period which applies.") (quoting *Maiden v. Biehl,* 582 F.Supp. 1209, 1218 (S.D.N.Y.1984)). This result comports with general principals of trust law, for the trustee holds property for the benefit of the beneficiary. *See Restatement (Second) of Trusts* § 2 (1959). Economic harm to the trust is ultimately felt by the beneficiary. The court believes that the logical rule suggested in *Appel* is the one Kansas would follow. *Cf., Nat. Union Fire Ins. Co. v. Resolution Trust Corp.,* 923 F.Supp. 1402, 1406 (D.Kan.1996) ("For issues involving the interpretation of an insurance contract, Kansas uses the law of the place where the beneficiary resides.") (citing *Alliance Life Ins. Co. v. Ulysses Volunteer Fireman's Relief Ass'n,* 215 Kan. 937, 929(sic)–41, 529 P.2d 171 (1974)).

■ To recap, in Kansas tort actions are governed by the *lex loci delicti* doctrine. Under Kansas choice of law principles, the law of Texas applies to the fraud claims asserted by residents of Texas at the time of the alleged fraud.[7] The law of Texas also applies to the fraud claims asserted by trusts on behalf of the beneficiaries who resided in

Texas during the relevant time frame.[8] Based upon the concession of the remaining plaintiffs, the law of Kansas will apply to their fraud claims found in Count VI of the third amended complaint.[9]

## Punitive Damages

In its January 14, 1998, memorandum and order, the court stated:

Punitive Damages. Punitive damages are not available in a private action under Rule 10b–5. *deHaas v. Empire Petroleum Co.,* 435 F.2d 1223, 1232 (10th Cir.1970). " '[B]ifurcation of trials is permissible in federal court even when such procedure is contrary to state law.' " *Shugart v. Central Rural Elec., Co-op.,* 110 F.3d 1501, 1504 (10th Cir.1997) (quoting *Oulds v. Principal Mut. Life Ins. Co.,* 6 F.3d 1431, 1435 (10th Cir.1993)).

The court is giving serious consideration to bifurcating the trial so that the jury would decide in the first proceeding the defendants' liability for compensatory and exemplary damages and the amount of compensatory damages. If the jury found liability for exemplary damages, then the appropriate trier of fact would determine the amount of exemplary damages in the second proceeding.

In the event that the court were to bifurcate the proceedings in the manner described above, the court would modify its earlier order (Dk. 517) filed August 24, 1992, to the extent that the defendants would not be required to produce evidence of their net worth unless the jury returned a verdict finding the defendants liable for exemplary damages.

*Koch,* 1998 WL 79151 at *7. As ordered by the court, the plaintiffs have briefed the issue, the defendants have responded and the plaintiffs have replied.

---

7. According to the plaintiffs' proffer, the law of Texas will be applied to the fraud claims asserted by Gay A. Roane and Holly Andres Cox Farabee.

8. According to the plaintiffs' proffer, the law of Texas will be applied to the fraud claims asserted by the Ann Alspaugh Trust, the Gay Roane Trusts B & C, the Gaylan Roane Trusts B & D, the G. Grant Roane Trusts B & D, the Marjorie Roane

Trusts B & D, and the Holly Cox [now Farabee] Trusts B & D.

9. Based upon the proffer of the plaintiffs, the law of Kansas will be applied to the fraud claims asserted by these trusts: the Ann Alspaugh Cox Trust B & C, the Paul Cox Trusts B & D, the Howard B. Alspaugh Trust B. and Nationsbank, N.A., on behalf of the Cox trusts.

## Trier of Fact

At this point in time, the court expresses no opinion on the issue of whether the jury or the court is the appropriate trier of fact on the issue of punitive damages. That determination will be made by the court only if the jury returns a finding that punitive damages are appropriate. The parties should be prepared to fully brief this issue, particularly in light of this court's rulings on the choice of law issue.

## Bifurcation

In response to the court's request to brief this issue, the plaintiffs expressly agree that the court should bifurcate the trial in the manner set forth above. The defendants agree also that the issue of punitive damages should be bifurcated for separate trial. The defendants contend that bifurcation is appropriate because "[t]here is no viable basis for punitive damages in this case, and judicial economy will be served by first testing whether a claim on any legal theory warranting punitive damages will survive a motion for" judgment as a matter of law. The defendants go on to suggest, however, that the court "should direct the parties not to reference a claim for punitive damages until such time, if ever, that the Court determines that punitive damage claim may be pursued in this case."

In light of the parties' agreement, the court bifurcates the trial of this case so that the jury will decide in the first proceeding the defendants' liability for compensatory and exemplary damages and the amount of compensatory damages. If the jury finds liability for exemplary damages, then the appropriate trier of fact will determine the amount of exemplary damages in the second proceeding.

The court rejects the defendants' suggestion that all parties be prohibited from referring to any claims for punitive damages until the middle (or end) of trial. First, the jury will receive proper instructions on the issue of damages and the important distinctions between actual and punitive damages. Second, failing to inform the jury at the outset that punitive damages are potentially available in this case would be, from the court's experience, a grave error. For example, in *United States v. Ruedlinger*, 976 F.Supp. 976 (D.Kan.1997), the court bifurcated the 17 counts charging mail fraud, wire fraud and money laundering from an eighteenth count in which the government sought forfeiture of certain property. At the outset, the court informed the jury that after they had deliberated, and if possible, returned a verdict on Counts 1 through 17, that it might be necessary for the jury to hear additional arguments, to consider additional evidence and for the court to provide the jury with additional instructions regarding additional matters charged in the second superseding indictment. The court also instructed the jury that such a possibility should not influence their consideration of the evidence in any way. Following a lengthy and complicated trial, the jury returned verdicts finding the defendant guilty of several counts. Although previously alerted to the possibility of additional proceedings following their verdict on the seventeen counts, the jury was uniformly dismayed about the need for them to subsequently return for additional proceedings. Fortuitously for the jury, their need to return was obviated when the court granted the government's motion to dismiss the forfeiture count based upon the government's decision to pursue the matter through civil forfeiture. Although the unique circumstances of that criminal case justified the oblique reference to the possibility of additional proceedings in regard to the bifurcated count, this case, despite its intricacies and complexities, does not warrant such a procedure. If the issue of punitive damages was raised for the first time following a six week trial, the court is uncertain upon whom the jury's dismay and possible wrath would fall. This observation is particularly true if the court finds that the jury is the appropriate trier of fact for determining the amount of punitive damages to award. Third, as evidenced in part by the jury questionnaires submitted to prospective jurors in this case, limited voir dire of the prospective jurors relating to the issue of punitive damages may be appropriate.

In sum, bifurcation as described above, accompanied by appropriate instructions, will adequately address the defendants' concerns.

IT IS THEREFORE ORDERED that the choice of law principles set forth above will be applied to the fraud claims set forth in Count VI of the plaintiffs' third amended complaint.

IT IS FURTHER ORDERED that the trial in this matter will be bifurcated as follows: the jury will decide in the first proceeding the defendants' liability for compensatory and exemplary damages and the amount of compensatory damages. If the jury finds liability for exemplary damages, then the appropriate trier of fact will determine the amount of exemplary damages in the second proceeding. The determination of the appropriate trier of fact for the amount of punitive damages is taken under advisement.